# The Lake Erie and Western Railroad Company

*v.*

## Nancy V. Middleton, Admx.

*Filed at Springfield November 2, 1892.*

1. Master and servant — *whether persons are fellow-servants is a mixed question of law and fact.* Whether two servants of the same master, in any given case, are fellow-servants, is a mixed question of law and of fact, and in the trial court it should be considered in both aspects. It is for the court, by proper instructions, to explain and define the relation of fellow-servants, so far as it is capable of legal definition, and for the jury, in considering the evidence, to determine whether the relation thus defined in fact existed.

2. A servant of a railway company, while acting as fireman on a locomotive engine, was killed by the collision of a freight train running at great speed : *Held*, that whether the deceased and those in charge of the colliding train were fellow-servants, within the rule which exempts

the master from liability for an injury to a servant caused by the negligence of a fellow-servant, was properly submitted to the jury as a question of fact, under instructions defining the relation of fellow-servants.

3. Practice — *instructions.* A party is hardly in a position to complain of an instruction given, submitting a question to be determined, by the evidence, as a question of fact, accompanied with other proper instructions as to the law, when he has submitted to the jury for a special finding almost the same question.

4. Same — *remarks of counsel.* On the trial of an action against a railway company to recover damages for causing the death of the plaintiff's intestate, plaintiff's counsel, in his closing address to the jury, said: "How can you go out and explain to your neighbors and friends if you find a verdict for this railroad company?" Defendant objected, and the court said: "It is matter of argument. If counsel desire to make such remarks, I will overrule the objection and let them take chances." Nothing objectionable was thereafter said: *Held,* that this court could not say the remark was ground of error, as it was not advised as to what preceded and followed the words complained of, and what caused the same, and that it is improper for counsel to make appeals to the approval or disapproval of the public as a consideration to weigh with the jury.

5. Where remarks of counsel, in his argument to the jury, have escaped the censure of the trial judge, this court will not interfere, unless in a case in which they are clearly prejudicial to the opposite party, and which, under no theory of the case, can be justified.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. Owen T. Reeves, Judge, presiding.

Mr. A. E. De Mange, and Mr. W. E. Hackedorn, for the appellant:

As to who are fellow-servants, see *Abend* v. *Railroad Co.* 111 Ill. 202; *Railroad Co.* v. *Geary,* 110 id. 383; *Railroad Co.* v. *Keefe,* 47 id. 108; *Railroad Co.* v. *Murphy,* 53 id. 336; *Valtez* v. *Railroad Co.* 85 id. 500; *Railway Co.* v. *Britz,* 72 id. 256; *Railroad Co.* v. *Robb,* 36 Ill. App. 627; *Mining Co.* v. *Leonard,* 25 id. 95; *Railroad Co.* v. *Robinson,* 4 Bush. 508; *Railway Co.* v. *Devinney,* 17 Ohio St. 197; *Wilson* v. *Railroad Co.* 18 Ind. 226; *Wright* v. *Railroad Co.* 25 N. Y. 505; *Quebec S. Co.* v. *Merchant,* 133 U. S. 375.

Mr. J. H. ROWELL, and Mr. THOMAS F. TIPTON, for the appellee:

As to who are fellow-servants, see *Rolling Mill Co.* v. *Johnson,* 114 Ill. 57; *Railroad Co.* v. *May,* 108 id. 288; *Railroad Co.* v. *Kelly,* 127 id. 637; *Joliet Steel Co.* v. *Shields,* 134 id. 209.

The definition of fellow-servant may be a question of law, but it is always a question of fact, to be determined, from the evidence, whether the particular case falls within this definition. *Railroad Co.* v. *Morgenstern,* 106 Ill. 216; *Railway Co.* v. *Moranda,* 108 id. 581.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This was an action on the case, brought by Nancy V. Middleton, administratrix of the estate of Amos Middleton, deceased, against the Lake Erie and Western Railroad Company, to recover damages for the death of the plaintiff's intestate. At and for a considerable time prior to the death of Middleton, he and Oscar Brenner were employed by the defendant at its round-house in the city of Bloomington, the latter in the capacity of "hostler" and the former in the capacity of "hostler's assistant" or "wiper," it being their duty to receive the defendant's engines arriving at Bloomington with trains, take them to the round-house, clean and care for them, provide them with coal and water, and deliver them fired up and ready for service to the engineers of out-going trains. It was also a part of their duty to make up trains in the defendant's yard at Bloomington. This latter duty made it necessary for them to operate an engine on the switches, side-tracks and main-tracks of the defendant in the yard. In running engines to make up trains, Brenner served as engineer and Middleton as fireman. In order to get coal and water, they were required to run the engines upon the main-track of the defendant's road to the coal-shaft and water-tank and back, a distance of about a mile. On their trips to and from the coal-

shaft and water-tank, and while making up trains, they were liable to and at times did pass and re-pass regular trains, as well as special trains arriving at or passing through Bloomington.

On the 28th day of August, 1891, one of the defendant's engines known as engine number 40, was to take a freight train east on the defendant's road from Bloomington, at 4:45 o'clock in the morning. It was the custom to use this engine to make up trains, and on the morning in question, Brenner and Middleton took it out of the round-house, run it to the coal-shaft and water-tank and supplied it with coal and water, and returned with it to the depot, and stopped it and allowed it to stand on the main-track near the depot. It was their duty and their intention to do the necessary switching to make up the out-going train, and they stopped at the depot to get from the defendant's agent a list of the cars that were to be put into such train. On reaching the depot, Brenner went for the list, leaving Middleton on the engine. He returned with the list, placed it under the cushion of the engineer's seat, and then went to a restaurant about 150 feet away, still leaving Middleton at his post on the engine.

At this time no regular train was due at Bloomington over the defendant's road, but a train which would stop at the same depot was due on another railroad whose track for a considerable distance run parallel with and close to the defendant's road. It seems, however, that the night telegraph operator of the defendant knew, from a message which he casually heard passing over the wires, that a special train was on the road, but he was not otherwise notified, nor did he notify any one else of its coming.

The time at which Brenner left his engine to go to the restaurant was 3:28 o'clock in the morning. He walked directly to the restaurant and at the moment he arrived there, he heard the whistle of an incoming train, which he supposed was the train due on the other road. It proved to be an extra freight

train on the defendant's road, which, coming into Bloomington on a down grade, had got beyond the control of the employes in charge of it, and which about two minutes later, as the evidence tends to show, reached the depot running at a speed of from thirty to forty miles an hour, and there collided with engine number 40 on which Middleton then was, killing him instantly.

It appears that in consequence of a curve in the defendant's track and the presence of intervening objects, the headlight of the approaching train could not be seen at a distance of more than 500 or 600 feet from the place where engine number 40 was standing. The evidence also tends to show that the brakemen on the colliding train were not at their posts; that the brakes were not set; that some of them were new to and unacquainted with that particular road, and that they lost control of and failed to stop said train through negligence and incompetency. There is also some evidence tending to show, though on this question the evidence is very conflicting, that Middleton had started his engine to get out of the way before the collision, and that the wheels of the engine had made at least one revolution. After the collision, he was found lying in the cab of the engine, with one foot on the steps and the other in the gangway, and covered with a mass of coal which had been thrown on to him from the tender.

The declaration, which consists of eight counts, alleges in each count, that the deceased, at the time he was killed, was, with all due care and caution, a fireman on one of the defendant's engines. Some of the counts allege that the defendant's servants, who were not fellow servants of the deceased, carelessly and improperly drove a certain other engine and train of cars, with great force and violence, against the engine on which the deceased then was, and killed him. Other counts alleged, in various forms, that the defendant's servants in charge of the colliding train, by reason of negligence and incompetency, lost control of said train, whereby said train run

against the engine in charge of the deceased and killed him, and that the defendant knew, or by the exercise of ordinary diligence might have known, that its said servants were incompetent. One or more of said counts allege that said engine and train, at the time of the collision, were running through the city of Bloomington at a high rate of speed, in violation of an ordinance of said city.

The trial, which was had before a jury on a plea of not guilty, resulted in a verdict in favor of the plaintiff and assessing her damages at $5000. The jury also made various special findings upon questions submitted to them at the defendant's request. The court thereupon, after denying the defendant's motion for a new trial, rendered judgment in accordance with the verdict. On appeal to the Appellate Court, said judgment was affirmed, and this appeal is from said judgment of affirmance.

All controverted questions of fact being settled adversely to the defendant by the judgment of the Appellate Court, the question whether the defendant and its servants were guilty of negligence as charged in the declaration, or whether the deceased was guilty of contributory negligence, is not now open for discussion. It must be assumed, as a matter admitting of no further controversy, that the finding of the jury upon these, and all other controverted questions of fact, in favor of the plaintiff, is warranted by the evidence. If then the jury were properly instructed as to the law, and no other error of law is apparent on the face of the record, the judgment must be affirmed.

The proposition most strenuously insisted upon by the defendant, both in the courts below and here, is, that the deceased and those in charge of the colliding train were fellow servants, within the rule which exempts a master from liability for an injury to a servant caused by the negligence of a fellow servant. To answer this contention it becomes important to notice how far the question it presents is an open one in this court.

Whether two servants of the same master, in any given case, are fellow servants, is a mixed question of law and of fact, and in the trial court it was a question to be considered in both aspects. It was for the court, by proper instructions, to explain and define the relation of fellow servants, so far as it is capable of legal definition, and for the jury, in consider-ing the evidence, to determine whether the relation, as thus defined, in fact existed. In the Appellate Court, both the rul-ings of the court as to the law, and the findings of the jury as to the facts, were open for review. But the statute, proba-bly in view of the maxim that it is for the public interest that there should be an end to litigation, has provided, and no doubt wisely, that the consideration of the facts at issue shall not proceed further, but that the judgment of the Appellate Court shall be accepted as final. Nothing remains therefore for review in this court but the law, as laid down by the trial court, in its instructions to the jury.

Turning now to the instructions, we find that, at the in-stance of each party, instructions were given defining and explaining the legal relation of fellow servants in very much the same language and to the same identical effect, and no suggestion is now made that any of the instructions thus given failed to state the law correctly. But complaint is made of the following instruction given at the instance of the plaintiff, and which was given in connection with and immediately fol-lowing the plaintiff's instructions defining fellow servants :

"The court instructs the jury, that the question as to whether Amos Middleton, the deceased, and the servants of the defendant in charge of the train in question, and spoken of by the witnesses, were fellow servants, so as to exempt the defendant from liability from any negligence of its servants in the management of said train, is a question of fact, to be determined by the jury, from the evidence in the case, under the instructions of the court."

If there was error in thus submitting this question to the jury as a question of fact, we are of the opinion that the defendant is scarcely in a position to complain of it. An instruction given to the jury at its instance submitted to them the question whether Middleton and those in charge of the colliding train were fellow servants, to be determined by them from the evidence, as a question of fact, and at its request, the question whether the plaintiff had proved that Middleton was not a fellow servant, and in the same general business and line of employment, with those in charge of said train, was submitted to the jury for a special finding, the jury answering said question in the affirmative. It is difficult to see how the defendant after having had these instructions given can now insist that it was error to submit that question to the jury as a question of fact, such submission being accompanied with proper instructions as to the law.

But we are of the opinion that said instruction was clearly proper. The question whether Middleton was a fellow servant with those in charge of the colliding train was a fact for the jury, and it was the duty of the court to submit it to them, with proper instructions as to the law defining the relation. Substantially the same question was decided in *I. & St. L. R. R. Co.* v. *Morgenstern*, 106 Ill. 216. There the question was whether the deceased and one Bray were fellow servants and on that question we said: "The definition of fellow servant may be a question of law, but it is always a question of fact, to be determined from the evidence, whether a given case falls within the definition. Whether the deceased and Bray were fellow servants, depended upon a variety of facts which had to be proven before the jury. The inquiry would arise whether they were in the service of a common master: were they engaged in the same line of employment: were the existing relations between them of such a character, and their duties such, as to bring them often together, co-operating in a particular work. These, and perhaps other facts of a kindred character,

were matters to be proven before the jury, and from the facts thus proven, it was for the jury then to say whether the two servants, in the discharge of their duties, were fellows."

In *C. & N. W. Ry. Co.* v. *Moranda*, 108 Ill. 576, the circuit judge, relying upon certain expressions in the previous decision by this court of the same case, (93 Ill. 302,) instructed the jury, as a matter of law, that a man employed by a railway company in the capacity of a section foreman, having charge and oversight of repairs upon a certain portion of its track, was not a fellow servant with an engineer and fireman running one of its locomotive engines. This instruction was held to be erroneous, for the reason that, whether the section foreman and the engineer and fireman, at the time the section foreman was killed, were so co-operating and consociating, as to render them fellow servants, was a question of fact for the jury, and not of law for the court. The expressions in the previous opinion were explained as having been used when this court reviewed questions of fact as well as of law, and were only intended to be understood as made in the discussion of the facts appearing in the former record. See also, *C. & A. R. R. Co.* v. *Bonifield*, 104 Ill. 223; *Wabash Ry. Co.* v. *Elliott*, 98 id. 481; *Penn. Co.* v. *Conlan*, 101 id. 93.

The counsel for the plaintiff, in his closing address to the jury said: "How can you go out and explain to your neighbors and friends if you find a verdict for this railroad company?" The counsel for the defendant objected to this remark, and the court, in passing upon the objection, said: "It is a matter of argument. If counsel desire to make such remarks, I will overrule the objection, and let them take the chances." There is no complaint that counsel thereafter persisted in remarks of that character, or said anything further that was objectionable.

The remark, as made, would seem to be an appeal to popular approval or disapproval of the action of the jury if they should find a verdict for the defendant. So far as it partook

of that character, it was clearly illegitimate and improper. But it is impossible for us, in considering this one detached sentence, with no information as to its context or the line of argument of which it formed a part, or as to what had already been said by the same counsel or by the counsel on the other side, to determine whether, all things considered, it may not have been justified, or to what extent it may have been prejudicial to the defendant. Counsel must be allowed a reasonable latitude in their arguments, and while it is improper for them to make appeals to the approval or disapproval of the public, as a consideration to weigh with the jury, reliance must be placed upon the good sense and sound discretion of the judge before whom the trial is had, to keep the remarks of counsel within due and proper bounds. He hears the entire argument on both sides, and is cognizant of all that has transpired during the trial, calling for or tending to justify the remarks which counsel may desire to make, and where the argument of counsel has escaped his censure, this court will not interfere unless it is one which is clearly prejudicial to the opposite party, and which under no theory of the case can be justified. While the remark complained of here may have been and probably was improper, we can not say that it was of such character as should call for interference on our part. If we attribute to the jury reasonable and ordinary common sense, we can not believe that they were unduly influenced by it, and although the court refused to sustain the objection to it, still we may presume that the covert warning conveyed by the language in which the judge couched his decision was quite as effectual in preventing further objectionable remarks by counsel, as a decision condemning the remark already made would have done.

In our opinion, the record before us is free from substantial error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*