## KELLER *v.* GASKILL ET AL.

[No. 2,329.   Filed April 28, 1898.   Rehearing denied June 28, 1898.]

APPEAL AND ERROR.—*Law of Case.—Pleading.*—A holding by the court in a former appeal of the cause in the consideration of the special verdict, that certain facts therein found amounted to negligence on the part of defendant, constitutes the law of the case as to subsequent pleadings therein in which such acts of negligence were properly pleaded.   *p. 504.*

SPECIAL VERDICT.— *Master and Servant.— Damages for Personal Injuries.*—A special verdict in an action for personal injuries found that plaintiff, a boy about eighteen years of age, who was employed in defendants' factory to assist in making dental supplies was required by defendant to run the engine and instructed to report to certain other employes who had formerly run the engine anything which he might observe to be out of repair, and to follow the advice of such employe relative thereto; that plaintiff observed that a belt was worn and had begun to break, and reported the same to one of such employes, who instructed him to remove the belt and repair the same, and in attempting to remove the belt, without stopping the engine, he was caught by a set-screw in a revolving shaft, and injured; that plaintiff was not instructed to stop the engine before removing the belt, although he had seen the engine stopped on a previous occasion for the purpose of removing the belt.   The jury found that the shaft was revolving at the rate of 240 revolutions a minute, and that plaintiff could not see the set-screw, and did not know of the existence thereof, although he had oiled the bearings on the line shaft within three inches of the set-screw once a day for about three weeks prior to the accident.   *Held,* that there was not such ambiguity in the verdict as to render it insufficient to sustain a judgment for plaintiff.   *pp. 505-511.*

MASTER AND SERVANT.—*Fellow Servant.*—The question whether or not the facts exist which make two or more employes fellow servants is a question of fact, but when such facts are found it becomes a question for the court to determine whether or not those facts bring the matter within the legal definition of a fellow servant.   *p. 512.*

DAMAGES.—*Assessment.—Jury not Required to Itemize.—Practice.*— No error was committed in refusing to submit certain interrogatories to the jury inquiring concerning the several amounts allowed as separate items in the assessment of damages in an action for damages on account of personal injuries sustained by plaintiff while in the employ of defendant.   *p. 513.*

Keller *v.* Gaskill *et al.*

From the DeKalb Circuit Court.  *Affirmed.*

*S. F. Swayne* and *A. A. Chapin,* for appellant.

*E. V. Harris* and *F. S. Roby,* for appellees.

BLACK, J.—On a former appeal in this cause it was determined that in the special verdict then under consideration it was not sufficiently shown that the plaintiff was free from contributory fault. *Keller* v. *Gaskill,* 9 Ind. App. 670. Upon a return of the cause for a new trial, it having been suggested that the plaintiff, Frank Gaskill, had reached his majority, his next friend was discharged, and thereafter the cause was prosecuted by the plaintiff in his own name alone, against the original defendant, Josiah O. Keller, now the appellant, and Anna Keller, who was made an additional defendant in an amended complaint in two paragraphs. The issues formed were tried by jury, and a special verdict was returned.

A motion of the defendant Anna Keller for a new trial was sustained. A like motion of the defendant Josiah O. Keller was overruled, and judgment was rendered against him on the special verdict. He appeals, naming his codefendant and the plaintiff as appellees in the assignment of errors. The overruling of the joint demurrer of the defendants to each paragraph of the second amended complaint being assigned as error, it is claimed in argument that neither paragraph of the complaint stated facts sufficient. The learned counsel for the appellant suggest that both paragraphs of the complaint are objectionable on the ground that neither shows such a condition as made it obligatory upon the appellant to warn the plaintiff of his hazardous attempt, and that neither shows that he was free from contributory negligence. On the former appeal it was decided that the second paragraph of complaint was sufficient to withstand a

demurrer. Upon comparison of that paragraph (which is shown by the record now before us) with the second paragraph as last amended, we do not find any substantial difference between them upon the matters to which the appellant's objections are directed. In the appellant's brief it is stated that the first and second paragraphs are substantially alike, except that while the first proceeds upon the theory that the defendants set the plaintiff, a minor, to work at that which he was not employed to do, the second paragraph proceeds upon the theory that he was injured while discharging the duties of his employment. There could, therefore, be no substantial difference in the particulars embraced in appellant's criticism. Upon the former appeal, the court, in discussing the special verdict, said: "It sufficiently appears, however, that shifting and repairing the belts, even those connected with the lathe upon which we may assume he was at work, was such employment in connection with the revolving machinery as required special instructions and admonitions to the appellee in order to make him comprehend the hazard and peril to which he was thereby exposed. These the jury find he had not received, and, as we have already said, this omission, coupled with the act of appellant in ordering the appellee to perform this class of work under such circumstances, constituted negligence in the appellant." This conclusion of the court on the former appeal is the law of the case relating to the matter to which it pertains, and each paragraph of the complaint sufficiently shows such a condition as made it, under that decision of this court, obligatory upon the appellant to warn the plaintiff of the danger.

It is alleged in each paragraph that the plaintiff was free from fault, and in view of the allegations concerning his youth and inexperience and the nature

of the employment, we cannot say that the allegations of particular facts overcome the general averment of his freedom from fault. We may refrain from setting out the pleadings, inasmuch as the real contest between the parties is presented upon its merits in the special verdict.

The facts were shown by the special verdict substantially as follows, omitting some matters relating only to the defendant Anna Keller: The defendants owned and conducted at Fort Wayne, Indiana, a manufacturing establishment, engaged in making dental tools and appliances. At and before the time of plaintiff's injury the factory consisted of a large four-story building, in which there was a steam engine, by which power was supplied to run and operate machinery, shafts, belts, pulleys and appliances which were in the factory. In July, 1890, the plaintiff, then about seventeen years and eight months of age, applied for employment in the factory to the defendant Josiah O. Keller, who in all matters relating to the employment and direction of the plaintiff, acted for himself and his codefendant, and as general manager. The defendants in said factory, made dental engine burrs, the manufacture of which required skilled labor, and constituted a trade by itself; and the plaintiff applied for employment to learn that trade. Within three days thereafter the plaintiff's father went to the defendant Josiah Keller, and conferred with him relative to the employment of the plaintiff to learn that trade, and said Josiah then took plaintiff's father into the room where such dental engine burrs were made and showed him what the work of making them consisted of; and it was thereupon agreed by the parties that the plaintiff should be taught that trade, and that he should at once begin work on the easier and simpler branches of the trade, and that as his skill in-

creased, he was to be advanced to the more difficult and artistic grades of said trade and employment, until he should become proficient therein, and that during the first two weeks he should receive no remuneration for his services except such instruction, and that after the first two weeks he was to receive as compensation for his labor $2.00 per week in addition to such instruction. The work for the doing of which the parties so contracted was light work, unattended with danger. The plaintiff, upon such employment, and with the consent of his father, began to learn said trade. About three weeks after he entered upon such employment, he was required by the appellant to do work in the factory other than that embraced in said agreement, and the appellant then ordered and required him to do other and more hazardous work than that pointed out to the plaintiff and his father when the employment began. The plaintiff's father did not know of such change of employment. At the time of his injuries complained of, the plaintiff, in pursuance of the orders of the appellant, was acting as engineer in the factory, and as such was charged with the duty of running said engine, and the duty of oiling it and the line shafting, and the duty of repairing the belts. At the time of the injury he was not engaged in any work or duty connected with the trade of making dental engine burrs. Before he was ordered to do this other work, it had been done by two separate other employes, Thomas Corpenning and John Lipes. The appellant, when he set the plaintiff to do this other work, directed him to report to Corpenning or Lipes anything which he might observe to be out of repair, and that they would fix it or have it fixed, and that the plaintiff should, in that behalf, do what Corpenning or Lipes told him to do; and Corpenning and Lipes were each given the power to determine whether

any such repairs should be done by them, or any one of them, or to order it done. The appellant directed the plaintiff to obey the orders of either Corpenning or Lipes in that behalf. When the appellant was not personally present, Corpenning and Lipes had authority and direction to act for the defendants in regard to ordering or making any needed repairs of the belts, shafts or appliances connected with said engine, and any directions given to the plaintiff in that behalf were given by Corpenning or Lipes for the defendants, in their place and by their authority. On the 8th of September, 1890, the plaintiff was engaged in the line of duty enjoined upon him by the defendants different from and other than the making of dental engine burrs, when a belt, which extended down from a pulley on a line shaft, in the factory, to a small pulley used on a lathe therein, began to break and ravel, and was out of repair. Upon discovering this, the plaintiff reported the facts to Corpenning, and was by him, acting for the defendants, ordered to go and fix said belt himself. In compliance with this order, the plaintiff proceeded to take off said belt for the purpose of repairing it. In taking it off and in attending to the repair thereof he acted in the line of the duty required in his employment as engineer, and exercised his best skill and judgment. While he was thus proceeding, the engine from which power was had was not slacked in speed. He was not instructed to stop the engine when repairing belts and pulleys. Corpenning had full knowledge of the manner in which the plaintiff was proceeding to remove the belt and make the repairs, but did not object, or point out a better way to perform said duty. The plaintiff was ignorant of the proper and safe manner in which to do said work, which was dangerous and hazardous to life and limb. The plaintiff was too young and immature and inex-

perienced to know and fully appreciate or understand the danger and hazard connected with the work so undertaken and required of him. He was ignorant of and uninstructed as to the risk and peril connected with the removal of the belt and the shifting thereof. On said line shaft, near said pulley, there was a set-screw, which was set in a collar running around said line shaft, and attached to it by said set-screw, which projected from one-half inch to one inch and a quarter. In view of the plaintiff's tender age, inexperience, and the other circumstances of the situation, reasonable and ordinary care (it was found by the jury) required that he should have been instructed and cautioned by his employer. No such instructions were given him. The line shaft, collar and set-screw were revolving at a rate of 240 revolutions per minute at the time of the plaintiff's injury, and prior thereto. The plaintiff at said time did not know that the set-screw was, by its rapid revolution and location, substantially obscured from view, and did not know that it was located at said place. The set-screw was not seen by him, owing to his position and occupation and its rapid revolution. He was fully occupied in attempting to change the belt on the line shaft. During all the time after the broken belt came to his notice until his injury he was exercising such care, caution and prudence as persons of his age and capacity would and do exercise under the circumstances. It was further found that the plaintiff's injuries were received by reason of the negligent acts and omissions of the defendants as set out in these findings, and without fault on his part. It was found that the belt was not connected with the lathe which had been first assigned to the plaintiff to work at in making dental engine burrs, that, if the plaintiff had been instructed as to the proper and usual method of removing belts from the pulley on

the line shaft, no risk would have been incurred, and no injury would have happened to him. While he was trying to catch hold of the belt and to shift it to the other side of the pulley, the coat sleeve of his left arm was caught by said set-screw, rapidly revolving, and his arm was thereby twisted around the line shaft. His arm was thereby broken, lacerated and crushed, and he was thereby caused great pain of body and anguish of mind, put in peril of his life, and permanently disabled. It was further found, that in all he did and omitted to do in the premises, the plaintiff exercised the skill which he possessed, and acted with reasonable care, under the circumstances. He was without experience in running engines or repairing and operating the machinery and belts driven thereby, previous to his employment by the defendants. He possessed only such judgment, prudence and skill as are generally and ordinarily possessed by inexperienced boys of his then apparent age, which was from fourteen to fifteen years of age. The defendants knew and had full opportunity to know the apparent age and actual ability of the plaintiff at said time. No instructions were given him by either of the defendants relative to the hazard and danger connected with the duties enjoined upon him, or the manner of avoiding them. It was found that the plaintiff was damaged by the injury so received in the sum of $2,450.00.

It was further found that the plaintiff did not know, before he was injured, that the set-screw and collar were on the line shafting; that they were open to view, so that they could have been seen if he had looked; that he did not voluntarily proceed to repair the belt when he was injured; that at the time of his injury he attempted to throw the cord belt across to the other side of the pulley; that when he did so he put his arm over the set-screw, which was revolving on the line

shafting, that the set-screw was not in full view at the time he so put his arm over it. It was found that the plaintiff, at the time of his injury, possessed ordinary capacity; that he might not, with the use of ordinary care and prudence, have repaired the belt operating the lathe at which he was at work without going up to the line shaft; that it was necessary for him to go up to the line shaft, in order to repair the belt that was broken; that Corpenning ordered him to go upon the ladder to the line shaft to repair the belt. He was in possession of sufficient intelligence to know and did know, that, if his coat sleeve on his arm was caught on the set-screw of the revolving shaft, it would be liable to injure him. He had oiled bearings on the line shaft at a point within three inches of the set-screw, once every day for about three weeks before the injury. The appellant was informed of the plaintiff's age when his father went to the factory a few days after the plaintiff commenced work, and knew he was seventeen years and eight months old. It was further found that at the time of the injury the plaintiff possessed ordinary intelligence; that he possessed the usual intelligence and capacity of boys of his age; that if he had stopped the engine at the time he attempted to throw the belt across the pulley, the injury would not have occurred; that the plaintiff had frequently stopped the engine; that it was not dangerous to attempt to do so; that just before the injury he could have stopped the engine without incurring any danger; that there was nothing to prevent him from thus stopping the engine; that he did not make an examination of the set-screw before he was injured; that there was nothing to prevent him from making such examination; that he could have seen the set-screw if he had looked; that he did not look to see it before he was injured; that he knew the line shaft was re-

Keller *v.* Gaskill *et al.*

volving over 200 revolutions per minute; that he was in charge of the engine which furnished the power to run the line shaft; that he could have stopped the engine if he had so desired; that he possessed good eye sight, and his natural faculties were unimpaired. It was further found that it was the duty of Lipes and Corpenning to make dental engine burrs, and the latter also had the duty of acting in the capacity of foreman, and the former of acting as foreman or overseer; that the plaintiff was not instructed by Corpenning not to attempt to repair the belt without stopping the engine; that the plaintiff consented to a change of employment; that he saw a cord belt repaired on the buffing lathe near where he was injured a few days before the injury, and that the engine was stopped at the time it was so repaired.

The appellant's motion for a *venire de novo* was overruled. It is contended on behalf of the appellant that the findings are contradictory. The verdict was rendered by way of answering interrogatories submitted to the jury at the request of the attorneys. It is quite lengthy, and manifests much labor on the part of the able attorneys who prepared the interrogatories. In view of the claim of want of consistency in the answers of the jury, we have taken the great space necessary to substantially exhibit the findings. We think there is no such ambiguity as to render the verdict insufficient to sustain a judgment. As has been frequently said by our courts of appeal, special verdicts should not be subjected to such nice criticism as to defeat justice. All the parts should be considered together, with a view to harmonize them, if this be possible, without violating the apparent sense of any material finding when so compared with all other parts of the verdict. Without taking space to particularize,

we think that a careful examination of the whole verdict will fail to disclose any material contradictions.

A motion of the defendants for a new trial was overruled. It appears that of the interrogatories proposed by counsel for defendants to be answered by the jury in returning a special verdict the court refused to so submit to the jury the following: "Was Thomas Corpenning a co-employe with the plaintiff at the time of the injury?" It was plainly shown by answers given by the jury to other interrogatories submitted by the court that the plaintiff was an employe of the defendants, and that Corpenning also was their employe; and it was in like manner shown in what capacity and in what relation to each other they worked. It was shown that they were both employes of the defendants; that they were co-employes. It could not have benefited the appellant to have obtained an answer to the question concerning Corpenning which was rejected. Perhaps no more need be said, but the question whether or not the facts exist which make two or more persons fellow servants in the legal sense is a question of fact, but the definition of a fellow servant in that sense is a matter of law. When the facts have been put beyond dispute by the finding of the jury in a special verdict, it then becomes a question for the court to determine whether or not those facts bring the matter within the legal definition of a fellow servant. *Dube* v. *City of Lewiston,* 83 Me. 211, 22 Atl. 112; *Dealey* v. *Philadelphia, etc., R. R. Co.,* 16 Phil. 122; *Lake Erie, etc., R. R. Co.* v. *Middleton,* 142 Ill. 550, 32 N. E. 453. It may be also said here, as was said in *Atlas Engine Works* v. *Randall,* 100 Ind. 293, 50 Am. Rep. 798: "The master having subjected the servant to the command of another without information or caution with respect to all such obligations as the

Keller *v.* Gaskill *et al.*

master owes, the other stands in the master's place, and this is so notwithstanding the two servants are, as regards the common employment, fellow servants."

The refusal to submit certain other interrogatories, inquiring concerning the several amounts allowed by the jury as separate items in the assessment of damages, is presented as ground for a new trial. In *Ohio, etc., R. W. Co.* v. *Judy*, 120 Ind. 397, an action to recover damages for physical injury suffered through the defendant's wrongful act, it appears from the opinion of the court that interrogatories were submitted "requiring the jury to itemize the damages allowed, stating how much they allowed for humiliation and mortification, how much for mental suffering, how much for physical suffering, and so on, with the different items for which damages are assessable, and answers were made to these interrogatories."

The Supreme Court held that this was not proper practice, that "damages were assessable for all the injuries sustained, and the jury cannot be required to itemize and assess a separate amount for each element entering into and making up the gross sum allowed. As well it might be required of the plaintiff in his complaint to set forth the particulars of his claim for damages, alleging what amount of damage he sustained by reason of mental suffering, and what on account of physical suffering. This certainly could not be required in pleading, neither can it be required of a jury to assess the damage for each separately in a case of tort." The court in that case refused to consider the separate items stated by the jury in answer to interrogatories. The items concerning which inquiries were proposed in the case at bar were such as need not be specially pleaded, and, under the authority of the case last mentioned, we are constrained to hold

that there was no available error in refusing to require the jury to itemize the damages.

It is claimed for the appellant that some of the findings in the special verdict were not sustained by sufficient evidence, but we are of the opinion that we could not reverse the judgment upon that ground without invading the province of the jury and the trial court.

Finally, it is insisted that there was error in overruling the appellant's motion for judgment on the verdict. The portion of the opinion of this court upon the former appeal quoted above relating to the negligence of the appellant, is applicable to that branch of the case as presented by the verdict now under review, which, by its statement of facts, shows a duty on the part of the appellant toward the plaintiff, and the injury of the latter through the failure of the former to discharge that duty.

The former judgment was reversed for the reason, as already stated, that it was not sufficiently shown by the special verdict then before the court that the plaintiff was not chargeable with contributory negligence. We think that fault in the verdict has been sufficiently remedied on the last trial. On the former appeal it was said by the court: "We fully agree with the appellee's learned counsel that, under the peculiar circumstances, as to age, experience, etc., of the appellee, the question of contributory negligence is one for the jury. * * * We are furthermore disposed to adopt the definition of what constitutes due care in a case like this, as given by appellee's counsel from the cases cited by them, viz: 'Just such care as boys of that age, of ordinary care and prudence, would use under like circumstances,' and 'that a child is held to no greater care than is usually possessed by children of the same age.' But although a boy of the age of appellee is not required to use as much care as an

adult, nor more, perhaps, than such as is commensurate with his maturity and capacity, it can not be claimed that he is not required to exercise reasonable care according to the circumstances. Had the jury found that appellee had done this, it being a question peculiarly within their judgment, we would not feel authorized, for this reason, to disturb their verdict."

Counsel for the plaintiff seem to have been guided by these suggestions. The facts relating to plaintiff's situation, capacity, and conduct are fully stated, and the jury found it to be "a fact that during all the time after said broken belt came to his notice until his injury the plaintiff was exercising such care as persons of his age and capacity would and do exercise under the circumstances." It was also stated by the jury to be "a fact that in all he did and omitted to do in the premises plaintiff exercised the skill which he possessed, and acted with reasonable care under the circumstances," and that he "possessed only such prudence, judgment, and skill as are generally and ordinarily possessed by inexperienced boys of his apparent age," which "was from fourteen to fifteen years of age." The special verdict seems to fulfil the requirements of the decision of the case on the former appeal. The judgment is affirmed.