## WILKINSON COÖPERATIVE GLASS COMPANY v. DICKINSON.

[No. 5,199.    Filed April 5, 1905.]

1. APPEAL AND ERROR.—*Assignment.*—*Waiver.*—Failure to discuss an alleged error on appeal is a waiver thereof. p. 232.

2. AMENDMENTS.—*Name of Defendant.*—It is not error for the court to permit plaintiff during the trial to amend the name of defendant in the complaint, answer and summons, by striking out "Window" from the name "Wilkinson Coöperative Window Glass Company," where it appeared that the summons was properly served, and the real defendant was in court, defending the cause. p. 232.

3. SAME.—*Prejudicial.*—Where an amendment is made which does not prejudice a party, he has no right to complain. p. 233.

4. MASTER AND SERVANT.—*Fellow Servants.—Who Are.*—A servant using a sledge in tamping a cement floor is a fellow servant with the one who holds the block which is struck by such sledge in tamping. p. 236.

5. SAME.—*Incompetency of Fellow Servant.—Knowledge.—Evidence.* —The statements by a servant, at the time of employment, that all he knew of using a sledge was what he learned while working on the farm, and that he never worked in a factory, are insufficient to establish the master's knowledge of such servant's incompetency, the presumption being that he is competent. p. 236.

6. SAME.—*Employers' Liability Act.—Negligence in Execution of Master's Order.*—Where two fellow servants are engaged in tamping a cement floor, and the master orders that such floor be packed harder, but gives no direction as to the manner of doing such work, and one of such servants injures the other in the method adopted, no liability exists against such master by reason of the employers' 'liability act (§7083 Burns 1901). p. 237.

7. MAXIMS.—*Damnum absque injuria.—Application of.*—The maxim, *damnum absque injuria,* is applicable to a case of injury by one servant to his fellow servant, where no negligence of the master contributes to such injury. p. 237.

From Hancock Circuit Court; *E. W. Felt,* Judge.

Action by Frank L. Dickinson against the Wilkinson Cooperative Glass Company. From a judgment on a verdict for $750 for plaintiff, defendant appeals. *Reversed.*

*Miller, Elam & Fesler,* for appellant.
*Ephraim Marsh* and *W. W. Cook,* for appellee.

WILEY, J.—Appellant is a corporation engaged in the manufacture of window glass. Appellee was in its employ as a laborer, and his employment required him to pack glass in boxes for shipment. It was also his duty, under his employment, when the plant was not in operation, and repairs were being made, to assist in making repairs. Some time after he began his services with the appellant, a destructive cyclone demolished the buildings, and made it necessary to make extensive repairs. Among other repairs to be made were those to the furnace in which the glass was melted. Appellee was engaged with other workmen in making these repairs, and when so engaged was injured

by being struck on the hand with a sledge. Appellee and the person who struck him were engaged in tamping what is designated as the "bench" of the furnace. The manner of his injury will be stated later, when considering the sufficiency of the evidence to sustain the verdict and judgment.

The complaint is in two paragraphs, the first of which counts upon a common-law liability, based upon the alleged fact that Clark, who was handling the sledge, and who struck appellee's hand, was inexperienced and incompetent in the use of the sledge; that appellant knew of said fact, and continued him in its service with such knowledge, and that appellee was ignorant thereof. The second paragraph is based upon subdivision two, section one, of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), and in this paragraph it is alleged that appellant's superintendent, to whose order appellee and said Clark were bound to, and did conform, negligently directed them to do the work in a particular manner.

1. The issue was joined by a general denial, and a trial by jury resulting in a verdict for $750 in favor of appellee. Appellant's motion for a new trial was overruled. While appellant has assigned several errors, the only one discussed is the overruling of its motion for a new trial. The others are therefore waived. Appellant relies for a reversal upon two propositions, which were assigned as reasons for a new trial: (1) That the verdict is not sustained by sufficient evidence, and (2) that the court erred in permitting appellee to amend his complaint during the progress of the trial. We will consider these questions in their inverse order, because if there was error in permitting the amendment, the judgment would have to be reversed, and in that event it would be wholly unnecessary for us to consider the evidence.

2. In the original complaint appellee was sued in the corporate name of "Wilkinson Coöperative Window Glass Company." It was discovered during the progress of the

cause that its correct corporate name was "Wilkinson Co-operative Glass Company." Upon discovering the error in designating appellant, counsel for appellee moved for leave to amend the complaint by striking out the word "Window," and this motion, over appellant's objection, was sustained. The motion also went to the summons issued in the cause and the answer which had been filed. The summons issued in this behalf was served upon the proper officers of the Wilkinson Coöperative Glass Company. It employed counsel, appeared to the action, and was making its defense. Under the statute providing for amendments to pleadings, and under the repeated decisions upon the question, the trial court has a large discretion in allowing or rejecting amendments, and, unless that discretion is abused, courts of appeal will not review it. §397 Burns 1901, §394 R. S. 1881; *Citizens State Bank* v. *Adams* (1883), 91 Ind. 280; *McClellan* v. *Bond* (1884), 92 Ind. 424; *Burnett* v. *Milnes* (1897), 148 Ind. 230; *City of Huntington* v. *Folk* (1900), 154 Ind. 91.

3. The amendment of appellee's complaint by striking out the word "Window" was an immaterial amendment, and in nowise changed the issues. There is no showing of any character made that appellant was in anywise prejudiced by the amendment, and, this being true, it has no right to complain. *Raymond* v. *Wathen* (1895), 142 Ind. 367.

This brings us to the consideration of the question of the sufficiency of the evidence to sustain the verdict. As to the manner in which appellee was injured, the evidence is without conflict. Appellee and other employes were engaged in repairing one of appellant's furnaces. The particular work in which they were engaged at the time appellee was injured was tamping the "bench" of the furnace. The word "bench," as used in this connection, is described as meaning the "bottom or floor" of the furnace. The bottom or floor is made of "ground fire-clay, mixed with water, of the consistency for tamping with a heavy instrument,

till it became solid and firm." The tamping is done by placing a handle in a heavy block of timber, raising the block by the handle, and forcing it down to the floor, until it becomes solid and level. This can only be done when there is sufficient room or space to raise and lower the "tamp" perpendicularly. At the extreme edges of the floor, where it comes in contact with the walls of the furnace, this mode of tamping is not practicable, for the reason that the walls of the furnace are concave, or, as one witness describes it, because of the "angle" of the walls. Some other means of tamping that portion of the floor adjacent to the walls had to be devised, and the plan adopted in this instance was as follows: A square block of oak timber was procured. This block was from fourteen to eighteen inches in length, four inches wide and four inches thick. Appellee and one Clark were working together. Appellee would get down on his knees, and place this block on the floor, one end being placed against the wall, while he held the other end with his hand. Clark had a sledge, and with this he would hit or pound the block, and when the floor immediately under it became sufficiently compact, the block would be moved, and the same process continued. Clark was also on his knees while using the sledge. He hit the block with what the witnesses called an "up-and-down" stroke. We gather from this and all the evidence that he did not use a swinging blow, but gave the sledge all the force he could by the "up-and-down" stroke.

Appellee and Clark commenced this work by using a sledge weighing from four to five pounds. While they were thus engaged, Mr. R. R. Faulkner, appellant's president and general superintendent, went to the furnace to inspect the work. He said to the workmen, in substance, that they were not doing the work right; that they "must get that down next to the wall;" that they must strike the block harder, and instructed them to get a heavier sledge. Thereupon Clark procured a ten-pound sledge, and proceeded

with the work by striking the block with an "up-and-down" stroke. Faulkner told him to strike harder, so as to make the floor adjacent to the wall solid. Clark testified that he was striking as hard blows as he could by the "up-and-down" stroke, and that when Faulkner told him to strike harder he had to use a swinging blow, and in doing so the sledge came in contact with a stone that had been placed on the furnace longitudinally, by which the sledge was diverted, and it came down upon appellee's hand, several inches from where he intended it should fall. This stone, with others of like character, had been placed in the top of the furnace. Clark had been wielding the sledge "overhand" several times prior to the blow that injured appellee, and had struck the piece of timber each time at the proper place, and he testified that that blow would have fallen at the proper place if it had not been diverted by striking the stone. Appellee and Clark had been working about the furnace, doing repair work, for several days, but had not done any work jointly until the day of the accident. Faulkner, Clark and appellee knew that the stones above referred to were on the furnace walls. They were to be used in completing the repairs. The particular stone with which the sledge came in contact projected from the furnace wall some eight or ten inches. Clark and appellee commenced the work in which they were engaged under the direction of the "master teaser," who directed the work in the absence of Faulkner.

Upon the issue tendered by the allegation in the first paragraph of the complaint, that Clark was inexperienced, and incompetent to handle a sledge, and that appellant knew and appellee was ignorant of it, the evidence shows, without conflict, that when he was employed he told Faulkner that he had never worked in a factory. He also testified that he had worked on a farm, and that all he knew about handling a sledge was what he learned while working on the farm. Clark testified that while he knew the stone he

struck, in using the sledge, was projecting over the wall, he did not think he would strike it.

4. Under the evidence it must be held that Clark and appellee were fellow servants, and the general rule is that a master is not liable for injuries to a servant, resulting from the negligence or carelessness of a fellow servant. While it is true that the question whether facts exist which make two or more employes fellow servants is a question of fact, yet when such facts are determined, it becomes a question for the court to declare as a matter of law whether such facts bring the matter within the legal definition of a fellow servant. *Keller* v. *Gaskill* (1898), 20 Ind. App. 502.

5. There is no conflict in the evidence as to the relations existing between Clark and appellee. They were engaged in the same line of duty, working together for the common interest of a common master. It follows, therefore, that appellant is not liable under the first paragraph of complaint, unless it has been established that appellant knew that Clark was incompetent to do the work in which he was engaged, and retained him in its employ, with knowledge of such incompetency. There is no evidence to sustain this proposition. Neither is there any reasonable inference to be drawn from the evidence that would lead to that conclusion. The kind of work Clark was engaged in did not require any special skill. The fact—and this is the only one in evidence—that he told Faulkner that he had never worked in a factory was not sufficient to establish the alleged fact that appellant knew he was incompetent. The master must have notice of a servant's incompetency to render him liable for injuries resulting therefrom. The competency of servants is presumed, and the burden rests upon a servant to prove that his fellow servant was incompetent, and that the master had notice of it. *Chicago, etc., R. Co.* v. *Beatty* (1895), 13 Ind. App. 604; *Ohio, etc., R. Co.* v. *Dunn* (1894), 138 Ind. 18. In this appellee has wholly failed.

6.   Do the facts bring this case within the second subdivision of the employers' liability act?   These two men were engaged in simple, common labor, merely tamping the "bench" of a glass furnace to make it firm and level. There was no apparent danger to either of them from the manner in which they were doing the work.   When Faulkner told Clark that he must strike harder blows, to the end that they would be effective and accomplish the desired result, he went no further than to tell him what was necessary to do.   He gave no order or direction of the manner in which he was to do it.   He did not tell him to cease striking the "up-and-down" blow and to use the "swinging" blow.   There is not a word of evidence to indicate that Faulkner knew that Clark was striking as hard as he could with the "up-and-down" blow, and it would make no difference if he did know it.   Neither does the evidence indicate that there was any more danger in striking the "swinging" than the "up-and-down" blow.   Even after Clark began to use the "swinging" movement, he struck accurate blows, and the only reason that the one which injured appellee did not fall where it was intended was because it was diverted by coming in contact with the stone on the furnace wall.   It is not alleged that the placing of the stone where it was was an act of negligence, and there is no evidence from which it can be deduced that it was negligence.   The accident resulting in appellee's injury was one which could not have been reasonably anticipated, and for which the order or direction of Faulkner was in nowise responsible.

7.   This is a case where the maxim *damnum absque injuria* applies, and there is no liability.   This leads us to the conclusion that the evidence is not sufficient to sustain the verdict.

Judgment reversed, and the trial court is directed to sustain appellant's motion for a new trial.