EDWARD O. ALLEN, RESPONDENT, *v.* LOGAN CITY, APPELLANT.[1]

MASTER AND SERVANT.—INJURY TO EMPLOYÉ.—ASSUMPTION OF RISK.—VICE PRINCIPAL.—NEGLIGENCE OF FELLOW SERVANTS. —In an action against a city for personal injuries it appeared that plaintiff, in order to work out his poll tax, was put to work by the road supervisor at undermining a gravel bank. The bank was undermined with a "pike pole" so that it would fall by its own weight, but at times giant powder was used to throw it down. Plaintiff was a careful man and had worked at the pit on two other occasions. He was informed of the dangerous character of the work, and to stand while working adjacent to the bank not undermined at a distance of four or five feet in order to avoid danger. The plaintiff

---

[1] Petition for rehearing denied August 31, 1894.

observed the directions, and after having undermined the bank a distance of 35 feet, the bank caved and fell a distance of 10 feet beyond the point where undermined and where plaintiff was standing. That part of the bank not undermined, fell on plaintiff and injured him before he could escape. The breaking of the bank not undermined was caused by its frozen condition, and from cracks and fissures caused by the use of giant powder the day before. The plaintiff was ignorant of the cracks on top of the bank caused by the shots the day before when he was absent. The road supervisor knew of the cracks, but was not present when the injury occurred, having left M. in charge, whom he instructed to look after the men. M. knew of the cracks and of the shots fired the day before but dik not inform plaintiff, but stood by and warned him when the bank showed signs of falling. *Held, first*—That plaintiff assumed the risk incident to the employment and that the injury was the result of a mere accident. *Second*—That if any negligence was shown which caused the injury, it was the negligence of a fellow servant. Bartch, J., *dissenting.*

(No. 482. Decided June 28, 1894. 37 P. R. 496.)

APPEAL from the District Court of the Fourth Judicial District, Hon. James A. Miner, *Judge.*

Action by Edward O. Allen against Logan City for damages for personal injuries. From a judgment for plaintiff, defendant appeals. *Reversed.*

[It may be noticed that the facts gleaned from the record by the court as expressed in its opinion and by Bartch, J., *dissenting,* are somewhat different.—Rep.]

Mr. *D. A. Reavill* and Messrs. *Evans & Rogers* and *Mr. W. W. Manehan,* for appellant.

The injury which occurred was the mere result of an accident, and cannot in the light of this record be attributed to any act done, known or omitted, showing carelessness on the part of the appellant. *Naylor* v. *C. & N. W. Ry.*

*Co.*, 53 Wis. 661; *Bennett* v. *Tintic Iron Co.*, 34 P. R. 61
(Utah); *Galveston* v. *Lempe*, 11 A. & E. Ry. Cas. 201
(Texas); *Simmons* v. *Chi. & T. Ry. Co.*, 110 Ill. 340;
*Anderson* v. *Winston*, 31 Fed. Rep. 528; *S. P. Co.* v.
*Seely*, 14 Sup. Ct. Rep. 530; *Griffin* v. *Ry. Co.*, 24 N. E.
R. 888 (Ind.); *Songstad* v. *Bur. Ry. Co.*, 41 N. W. R.
755 (Dak.); *Oleson* v. *McMullen*, 24 N. W. R. 318 (Minn.);
*Walsh* v. *Ry. Co.*, 27 Minn. 367; *Drake* v. *U. P. Ry. Co.*,
21 Pac. Rep. 560 (Idaho); *Armour* v. *Hahn*, 111 U. S.
313; *Ry. Co.* v. *Ward*, 61 Ill. 130. That if any negligence
was shown which caused the injury, it was the negligence
of a fellow servant. *Whatcheer Coal Co.* v. *Johnson*, 56
Fed. Rep. 810; *Ry. Co.* v. *Baugh*, 13 Sup. Ct. Rep. 914;
S. C. 56 Fed. Rep. 810; *Bennett* v. *Tintic Iron Co.*, 34
P. R. 61; *Clark* v. *Ry.*, 9 N. W. R. 581.

*Messrs. Rich & Rich* and *Messrs. Kimball & Allison*,
for respondent.

As to whether or not the manner in which the work
was being carried on was the safest way it could be done
was not a subject for expert testimony, and it is a well-
known rule that opinions of mechanics and workmen are
not admissible as to matters not of technical skill and
which may be decided by the jury. *Stillwater Tp. Co.* v.
*Coover*, 26 Ohio St. 520; *City of Parsons* v. *Lindsay*,
26 Kas. 426; *Crofut* v. *Brooklyn Ferry Co.*, 36 Barb.
201; *Dole* v. *Johnson*, 50 N. H. 455; *Allen* v. *Ry. Co.*,
26 Pac. (Utah) 297. Whether or not there was neg-
ligence shown on the part of the defendant, was a
question for the jury under all the circumstances of the
case. *R. R. Co.* v. *Stout*, 17 Wall. 657; *Hough* v. *R. R.
Co.*, 100 U. S. 213; *Insurance Co.* v. *Unsell*, 144 U. S.
443; *Jones* v. *R. R. Co.*, 128 U. S. 443; *Ry. Co.* v. *Pow-
ers*, 149 U. S. 43; *Gardner* v. *R. R. Co.*, 150 U. S. 348;
*R. R. Co.* v. *Ives*, 144 U. S. 408, 417; *R. R. Co.* v. *Cox*,

145 U. S. 593, 606; *R. R. Co.* v. *Van Steinberg*, 17 Mich. 99; *Reddon* v. *R. R. Co.*, 15 Pac. (Utah) 262; *Bowers* v. *R. R. Co.*, 7 Pac. (Utah) 251; *Davis* v. *R. R. Co.*, 3 Utah, 218; *Linderberg* v. *Mining Co.*, 33 Pac. (Utah) 692; *Wines* v. *Railway Co.*, 33 Pac. (Utah) 1042; *Leak* v. *Railway Co.*, 33 Pac. (Utah) 1045; *Smith* v. *Railway Co.*, 33 Pac. (Utah) 626; *Woods* v. *Railway Co.*, 33 Pac. (Utah) 628; *Hurd* v. *Railway Co.*, 30 Pac. (Utah) 982; *Pool* v. *Southern Pac. Co.* (Utah), 26 Pac. 654; *Anderson* v. *Railway Co.* (Utah), 30 Pac. 305; *Cunningham* v. *Ry. Co.* (Utah), 7 Pac. 795. A servant has the right to repose confidence in the prudence and caution of his employer, and to rely upon his not putting him in an improper or unsafe place to work, or in charge of improperly or dangerously constructed implements or machinery. *Railroad Co.* v. *Herbert*, 116 U. S. 642; *Hough* v. *R. R. Co.*, *supra*; *Bowers* v. *R. R. Co.*, 7 Pac. (Utah) 251; *Railroad Co.* v. *Irwin*, 16 Pac. 146; *Pidock* v. *Ry. Co.* (Utah), 19 Pac. 191; *Harrison* v. *Ry. Co.* (Utah), 27 Pac. 728; *R. R. Co.* v. *Dolan*, 32 Mich. 510.

The master as such is required to perform certain duties, and the person who discharges any of these duties, no matter what his rank or grade, no matter by what name he may be designated, cannot be a servant within the meaning of the rule under discussion. He is an agent, and the rules of law applicable to principal and agent must apply. *Gunter* v. *Mfg. Co.*, 18 S. Car. 262; S. C. 44 Am. Rep. 573; *Crispin* v. *Babbitt*, 81 N. Y. 516; *Flike* v. *R. C.*, 53 N. Y. 549; *McCosker* v. *R. Co.*, 84 N. Y. 77; *Brothers* v. *Carter*, 52 Mo. 372; *Corcoran* v. *Halibrook*, 59 N. Y. 517; *R. Co.* v. *Fox*, 31 Kas. 586; *Fones* v. *Phillips*, 39 Ark. 17; *R. R. Co.* v. *Fort*, 17 Wall. 553; *Railway Co.* v. *Snyder*, 151 U. S. 683, 38 L. ed. 597; *R. Co.* v. *Baugh*, 149 U. S. 368, 386; *Bowers* v. *Ry. Co.* (Utah), 7 Pac. 251; *Cunningham* v. *Ry. Co.* (Utah), 7 Pac. 795; *Gard-*

*ner* v. *R. R. Co.*, 150 U. S. 349. One who enters the service of another assumes all the risks and perils, naturally and ordinarily incident to the performance of his services, but he does not assume the perils of imperfect machinery, defective appliances, or unsafe places in which he is working at his master's behest. *R. R. Co.* v. *Herbert*, 116 U. S. 642; *R. R. Co.* v. *McDade*, 135 U. S. 554; *Railway Co.* v. *McDaniels*, 107 U. S. 459; *Lawless* v. *R. R. Co.*, 136 Mass. 1. The defense of contributory negligence is an affirmative defense and the burden of proof rested upon the defendant to establish it. *Hough* v. *Railroad Co.*, *supra; Stokes* v. *Saltonstall*, 13 Pet. 178; *Railroad Co.* v. *Gladman*, 15 Wall. 401; *Railroad Co.* v. *Horst*, 93 U. S. 291; *Reddon* v. *Railroad Co.* (Utah), 15 Pac. 265; *Bowers* v. *R. R. Co.* (Utah), 7 Pac. 251.

MERRITT, C. J.:

This is an action wherein respondent sued in the court below to recover damages for an injury which he sustained while working at undermining a gravel bank, which fell upon him, and caused the injury complained of. The jury rendered a verdict in favor of respondent for $2,200. A motion for a new trial was made and denied in the court below. From the judgment and order denying a new trial this appeal is taken.

The facts, as disclosed by the record, show that on the 28th day of December, 1891,—the date of the injury,—appellant, Logan City, a municipal corporation, was engaged in undermining and throwing down a bank of earth known as the "Temple Hill Gravel Bank," and hauling material therefrom, and using it in the improvement of the streets of Logan City. The bank extended along a distance in length of about 40 rods, with a perpendicular height of about $6\frac{1}{2}$ feet. The formation consisted of about a foot or 18 inches of soil and gravel, underneath which was $4\frac{1}{2}$ or

5 feet of cement, and still underneath the cement was a seam of loose gravel, which was easily removed. The weather was very cold, and the frost had penetrated the surface a distance of about 16 inches. The usual method of undermining the bank by the workmen employed upon it was to use what was called a "pike pole,"—an instrument with a handle about five or six feet long, containing a steel point at the end, which was thrust into the seam of gravel underneath; and thereby the workmen would cause the bank to be so undermined that in some cases it would fall of its own weight, and at other times giant powder was used in throwing it down.

Respondent, on previous occasions, had worked at the same employment in which he was engaged on the day of the injury, and had caused the bank to fall by undermining the same. He also knew of the method by which the bank had been worked and thrown down on previous occasions. On the day of the injury, without any objection on his part, and because he was a careful man, he was set to work by the road supervisor, Eliason, for the purpose of working his poll tax. He was informed that the work was of a very dangerous character; that he ought to be careful, so that the bank when undermined would not fall upon him. He was also told that the safest manner in which he could perform the work was to take this pike pole, and use it in front of him, and dig out the loose gravel underneath the cement, moving backward while so doing, keeping his body adjacent to the bank not undermined. He followed the directions given him, and began to work digging out the gravel underneath and back from the face of the bank, a distance of 4 or 5 feet, moving backward as directed; pursuing his work until he had undermined in that manner about 35 feet easterly from the point where he began. About 5 or 10 minutes before the accident, a Mr. McCullough, whom the road supervisor

had instructed to look after the men, warned respondent the bank would be likely to fall, and to be very careful. Mr. McCullough also stated to him that he would stand by him, and watch the bank, so that when it gave evidence of falling he would warn him. Mr. McCullough saw the bank was about to fall, and immediately gave warning to respondent, who began to run away, when the bank split off about 10 feet easterly from where it had been undermined, and opposite to the point where respondent was working. The falling of that portion of the bank not undermined struck the respondent, and partially buried him, and injured him. The breaking of the bank beyond the point where undermined, and by which respondent was working, was caused by its frozen condition, and probably because of cracks and fissures formed in the earth, caused by the use of giant powder on previous occasions.

McCullough and one Crockett knew that the bank opposite where respondent was working contained cracks on the morning prior to the time respondent went to work. Crockett, however, before respondent commenced to work, went upon the top of the bank, and, with a crowbar, pried off all the ragged edges and pieces that could be thrown down by the use of his bar, and left the bank in a safe condition with which to work, unless the same was undermined. The evidence does not show that Eliason knew of any cracks that were upon the surface of the bank. The respondent testified that he did not know of any cracks upon the surface opposite to where he was working, nor did he state that he would not have worked there, had he known of such cracks. On previous occasions, however, respondent had worked at the same employment, and knew that on other occasions powder had been used to throw down the bank, and that it had force and power sufficient for that purpose; and, upon a previous occasion when respondent was at work, the bank caved

while he was undermining it, but he succeeded in getting away in safety. The only purpose which respondent had in undermining the bank was to cause it to fall. His labor in undermining it was the occasion of the fall. The evidence also shows that respondent was repeatedly warned that the work was dangerous, and to be careful while he undermined the bank, so as to avoid an injury to himself when it would fall.

At the conclusion of the testimony for the respondent in the court below, appellant rested its case, and moved the court for a nonsuit on several grounds, among which were: First, that the evidence was insufficient to show any negligence on the part of appellant; second, that the evidence established the fact that respondent, in entering upon the contract of employment, assumed the risks and dangers incident to it; third, that whatever injury respondent suffered was brought upon himself by his own want of care and diligence; and, fourth, that if any negligence was shown, which caused the injury, the same was occasioned by a fellow servant of respondent. The court overruled appellant's motion for a nonsuit, to which appellant took an exception, and assigns error to this court.

In discussing the case under consideration, we deem it necessary to consider but two points: First, does the evidence show any negligence whatever upon the part of appellant which would entitle respondent to recover? and, second, if any negligence were shown by the evidence, was it the negligence of a fellow servant? These points will be considered in their order.

1. It will be seen that the evidence clearly established the fact that respondent was voluntarily working under a gravel bank, undermining the same for the purpose of causing it to fall; that he was warned of the dangerous position in which he had placed himself, and repeatedly warned to be careful, in order to prevent an injury. He

knew of the dangerous employment in which he had voluntarily engaged himself, and knew the manner in which the work was being carried on, and had actually been employed, carrying on the same work, upon previous occasions. He was engaged in a business, the accomplishment of which was, in its nature, extremely hazardous. The very purpose for which the bank was being undermined was to cause it to fall, so that the material might be used in improving the streets of the city. Without caving the bank, and causing it to fall, nothing of profit could be accomplished. The danger was as open and obvious to the servant as it was to the master. Respondent was a careful workman, and there is nothing in the evidence to show that he was incompetent, or did not understand the hazards incident to the work. He was familiar with all the facts and circumstances surrounding the employment, and is presumed to know that when he caused the bank to be undermined it would fall. In fact, that was the purpose for which he was employed, and the very business in which he was engaged, and the risks and dangers of the employment were assumed by him. Besides, the fall of earth was an unusually large one, splitting off the bank beyond the point where it was undermined, and by which respondent was standing. This, as shown by the evidence, was not only unusual, but unforeseen and unexpected. It was a mere accident which was the cause of the injury, for which the appellant is not liable. *Naylor* v. *Railway Co.*, 53 Wis. 661, 11 N. W. 24; *Bennett* v. *Iron Co.* (Utah), 34 Pac. 61; *District of Columbia* v. *McElligott*, 117 U. S. 621, 6. Sup. Ct. 884; *Railroad Co.* v. *Lempe*, 11 Am. & Eng. R. Cas. 201; *Anderson* v. *Winston*, 31 Fed. 528; *Songstad* v. *Railway Co.* (Dak.), 41 N. W. 755; *Griffin* v. *Railway Co.* (Ind. Sup.), 24 N. E. 888; *Walsh* v. *Railroad Co.*, 27 Minn.

367, 8 N. W. 145; *Southern Pac. Co.* v. *Seley,* 14 Sup. Ct. 530.

2. It is equally clear that if any negligence was shown, which caused the injury, it was the negligence of a fellow servant. Eliason, the road supervisor, was the vice principal of appellant. He directed respondent where to work, and warned him that it was dangerous, and to be careful, so that he would not receive an injury while working at the bank. The record shows that the supervisor had left the point where the work was being done, and had gone upon the streets of the city, where the gravel was being distributed. He left McCullough and one Worley in charge, and directed the other men what to do, and warned them to be cautious, so that no injury should occur. McCullough and Crockett were the only persons who knew of the existence of cracks on the surface of the bank. McCullough stated to respondent that he would warn him when the bank gave evidence of falling. If McCullough permitted respondent to remain at the bank too long, and was not as vigilant as he should have been in warning respondent, such negligence would be attributable to him alone. McCullough had no power to discharge or employ the workmen. He was engaged at the bank, and in the same general department, and working at the same general character of work, with respondent; and Crockett was working at the same place, and in the same manner. It is clear that McCullough and Crockett were fellow servants with respondent, and for their negligence, if any be shown, appellant is not liable. *Coal Co.* v. *Johnson,* 6 C. C. A. 148, 56 Fed. 810; *Railroad Co.* v. *Baugh,* 13 Sup. Ct. 914; *Bennett* v. *Iron Co., supra.*

It is clear, in principal and upon authority, that the unfortunate accident which resulted in the injury of respondent was one of the ordinary risks which he assumed

when he entered upon his employment, and for which appellant cannot be held liable. In our opinion the non-suit should have been granted. The judgment and order appealed from are therefore reversed, and the cause remanded, with costs, and with directions to grant a new trial.

SMITH, J., concurs.

BARTCH, J. *(dissenting)*:

I do not agree with my brethren in the reversal of this case. The plaintiff was summoned under the laws of this territory to work out his poll tax. He obeyed the summons, and placed himself in the hands of an officer who had charge of the work, willing to obey his directions. He assigned him to a dangerous position, where he had not been accustomed to work. He worked two half days, and on the third he was injured, without negligence on his part. He had never used giant powder, did not know the effects a shot would produce on the bank, and had never been on top of the bank, and it was not his duty to go there. No one had told him about the cracks which were visible on top of the bank, and which had been occasioned by the shots fired on the previous day, when he was absent. Nor did he know that any shots had been fired on the day previous to the accident. The officer who had charge of the blasting knew that cracks were on top of the bank, and that they extended beyond where plaintiff was at work, but said nothing to him about them. He did tell the foreman who had charge of the place that the bank was cracked opposite to where the plaintiff was working, and that it was dangerous to a man working there; but the foreman also failed to notify the plaintiff of the condition of the bank, although he received this information about

19

an hour and a half before the accident happened. It is shown that when the bank fell it broke away, as indicated by the crack on top, to a distance of about 10 feet beyond where the plaintiff was at work, and this rendered his escape impossible. If the plaintiff assumed the risks incident to his employment, can it be contended that he assumed the additional risks of danger occasioned by the blasting on the day previous, in his absence, of which he was in total ignorance? It seems to me that to so hold is to extend the rule too far. The agent of the appellant committed the acts causing the additional risk which the plaintiff unconsciously assumed, and then, in total disregard of his safety, neglected to inform him of his more perilous position. The plaintiff was but an ordinary laborer, unskilled in and unaccustomed to the work which he was performing, and was under the control of the officers and foreman of the appellant. I do not regard this as a case in which the rule applicable to a fellow servant will apply. *Armstrong* v. *Railway Co.,* 8 Utah, 420, 32 Pac. 693. I am of the opinion that the record presents a case which entitles the plaintiff to recover. I therefore dissent.