## Consolidated Coal Co. v. Benton Gruber.

1. STATUTES—*Construction of Section 5 of Chapter 33 in Relation to the Prosecution of Suits Without Costs.*—Section 5 of chapter 33, in relation to the prosecution of suits without costs, is broad enough in its terms to include all resident plaintiffs, whether adults or infants, who are unable to prosecute their suits and pay costs, and under its provisions courts have power, upon proper showing made, to allow a minor to prosecute a suit by his next friend, without requiring such next friend to give bond for costs.

2. FELLOW-SERVANTS—*The Rule in Relation to.*—Whether two servants of the same master in a given case are fellow-servants is a mixed question of law and fact, and in trial courts the question is to be considered in both aspects: for the court, by instructions, to define the relation of fellow-servants, and for the jury to determine whether the relation as thus defined in fact existed.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the February term, 1900. Affirmed. Opinion filed September 8, 1900.

CHARLES W. THOMAS, attorney for appellant.

WEBB & WEBB and HAMILL & BORDERS, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of St. Clair County, by appellee against appellant, to recover for a personal injury. Trial by jury. Verdict and judgment in favor of appellee for $6,000.

At and prior to the time of the injury complained of, appellant was operating a coal mine in St. Clair county. Appellee was a young man, about nineteen years old, and had worked in the mine for some time. At the time of his injury he was engaged as a " shoveler," and his duties were to shovel away the fine coal and dirt made by a mining machine in undercutting the coal. He had been serving in this capacity for about three weeks. It required two men to operate a machine, one to run it and one to shovel

away the *debris*. The same two men always operated the same machine during the day, and when there was night work, two other men operated it during the night. The machine was propelled by compressed air. The undercutting was always begun at the left side of the room and proceeded to the right. The machine, while at work, rested on a board, and about five feet could be undercut without moving the board. Each setting of the board was called a board run. The coal was usually undercut to the depth of about four and a half feet. When the coal had been undercut in this manner, the machine men would leave the room, and be followed up by "shooters," who would blast the coal down, and they in turn by "loaders," who would load the coal and clean up the room, after which the machine men would return to the room and again undercut. The last shooting and cleaning up in this room prior to the injury of appellee had been done on the 21st or 22d of July; this left the face coal at a certain point loose and cracked. The cracks extended five or six feet along the face of the coal and ran down nearly to the bottom. The mine manager had knowledge of this condition on the 23d. On the night of the 24th, when the two men were going into the room to run the machine, the manager warned them of the dangerous condition of the face of the coal. They went in and began to undercut, and cut two " board runs," and began the third, which extended under the loose and cracked coal. This they cut to a depth of about eighteen inches or two feet, left the remainder, of the usual depth, uncut for support, and moved the machine to the right for another run and began to cut that, when the machine got out of order and the men quit for the night. On the morning of the 25th, appellee and his companion, who were the day men for operating that machine, went into the room and began to cut where the night men had left off. The machine again got out of order and the machine runner requested appellee to go to another place in the mine for a key to fix it with, and in doing so, appellee came upon William Hamilton, who acted as "bottom man," or assistant mine man-

ager, in the 'absence of the manager.   Hamilton followed appellee into the room and asked the machine runner what was the matter with the machine, and being told, took charge of the machine and began to run it himself, and, as the evidence tends to show, in doing so commenced to cut to the left, cutting away the support upon which the loose and cracked coal rested, and directed appellee to shovel.   A few minutes after the machine began to be thus operated by Hamilton and appellee, a large quantity of coal from the loose and cracked place, to the left of where the machine was, fell upon appellee, and most seriously and permanently injured him.   There was no danger board or other danger signal at this place.   Neither appellee nor his companion were warned or notified of the condition or danger, and the evidence tends to show that appellee had not observed it and had no knowledge of it.

The declaration upon which the case was tried consisted of two counts, both charging common law negligence.   One, upon the theory that Hamilton was acting, at the time of the injury, in the capacity of vice principal, and that his negligence caused the injury; the other, that appellant failed to furnish appellee a reasonably safe place in which to work; that appellant had knowledge of the dangerous condition; that appellee had not such knowledge, and that appellant failed to give warning or notify appellee of the danger.

At the request of appellant, the court submitted fifteen special interrogatories to the jury.   The jury returned with their general verdict, responsive answer to each of these, and no answer so returned is inconsistent with the general verdict.

The first proposition argued by counsel for appellant as error calling for reversal, is, that the court erred in allowing appellee, who was a minor, and prosecuting by next friend, to prosecute as a poor person, without requiring cost bond. We regard this question as conclusively settled by the interpretation given to the sections of the statute involved, by both our own and the Supreme Courts.   In St. L., A. & T.

H. R. R. Co. v. Reagan, 52 Ill. App. 488, it is held that the court had power, upon proper showing made, to allow a minor to prosecute a suit by his next friend, without requiring such next friend to give bond for costs; and in C. & I. R. R. Co. v. Lane, 130 Ill. 116, it is held that section 5 of chapter 33 of the Revised Statutes, in relation to the prosecution of suits without costs, is broad enough in its terms to include all resident plaintiffs, whether they be adults or minors, who are poor persons and unable to prosecute their suits and pay costs. Section 5 of said chapter 33, and the proviso made in 1881 to section 18 of chapter 64, entitled " Guardian and Ward," are to be regarded as *in pari materia*, and a sensible and intelligent effect given to the provisions of each. The latter statute is not to be so construed as to deprive an infant, who has no means, of the privilege of suing without costs. A motion or cross-motion for leave to prosecute as a poor person, in such case, is, as in other cases, addressed to the judicial discretion of the court.

It does not appear from the record that there was any abuse of the discretionary power by the trial court.

The second proposition urged is that Hamilton and appellee were fellow-servants. In L. E. & W. R. R. Co. v. Middleton, 142 Ill. 550, our Supreme Court has said :

" Whether two servants of the same master, in any given case, are fellow servants, is a mixed question of law and fact, and in the trial court it was a question to be considered in both aspects. It was for the court, by proper instructions, to explain and define the relation of fellow-servants, so far as it is capable of legal definition, and for the jury in considering the evidence, to determine whether the relation, as thus defined, in fact existed."

This we understand to be the rule proper to apply in all cases, except where there is no substantial evidence or fair inference deducible from the evidence, tending to establish the relations contended for by the party upon whom the burden rests. The jury, in the answers returned to the fourth and seventh special interrogatories submitted to them, directly find that Hamilton was assistant mine manager, and that he was not, at the time of the injury, a fellow-servant with appellee in appellant's employ, and we

are of opinion that there is sufficient evidence in this record to support these findings.

The third proposition presented is, that appellee was not in the exercise of due care for his own safety. It is argued that it was his duty to look, and if he had looked he would have seen the cracks and known the coal was loose, and that his testimony that he did look and did not know the coal was loose, is false. It is not claimed there was any danger board or other danger sign or signal there to be seen. The line of undercutting appeared from the face to be the same all the way across, up to the machine, that portion immediately under the loose coal being cut to the depth of eighteen inches or two feet. The machine runner, appellee's associate, describes the appearance as just a small powder crack, and Hamilton, the assistant mine boss, who was running the machine at the time the coal fell, and himself narrowly escaped, did not see it and did not know it was loose. The mine manager, however, did know it, and had known it for two or three days. The jury in the answers returned to special interrogatories 12 and 6, directly find that appellee did examine the face of the coal and that he did not know that the coal was loose. There is substantial evidence tending to the conclusions established by these special findings.

The fourth proposition is that appellee was injured in consequence of one of the usual and ordinary hazards and risks of his employment. This is a question of fact and the testimony tends to prove the contrary. It tends to prove that the conditions were not usual and ordinary. The face of the coal in this room was dangerous. The mine manager had known that fact for two or three days; he knew that appellee's duty would in due course call him to work in that place; he did not notify him nor his associates of the danger, nor mark the place by anything to indicate danger. The rules posted by appellant, and appellee's duty to obey them, will not relieve appellant from the results of such negligence. In this connection, however, it is contended that the court improperly modified appellant's fourth and fifth instructions; but it is. apparent from the answers returned by the jury to the

eighth and ninth special interrogatories submitted, that the jury was not misled by the trial court's modification of these instructions.

Complaint is made that the jury did not act fairly in answering the special interrogatories. Most of the special interrogatories were improper to be submitted to the jury. They related to evidentiary and not to ultimate facts. There is testimony tending to support the answers returned to all of them, that should have been submitted.

Appellant's counsel complain of certain rulings of the trial court as to the admission and rejection of evidence. Some of the rulings complained of are not wholly free from error, but it has not been shown to us, and we are unable to find wherein appellant was materially prejudiced by these rulings, and as we feel that the case should not be remanded for another trial, we do not deem a discussion in detail of such rulings of sufficient importance to warrant the necessary time and space.

Appellee sustained permanent and most serious and distressing injury, and it is not contended that the amount of the verdict and judgment is excessive. We find no such error in this record as will, in our judgment, warrant a reversal. The judgment of the Circuit Court is affirmed.