THEODORE FREDERICKS, by his next friend ANNA BROWN, v. FORT DODGE BRICK & TILE COMPANY, Appellant.

**Master and servant:** PERSONAL INJURY: INSTRUCTION. Allegations that the place where plaintiff was directed to work was unusually and extraordinarily dangerous, and describing the dangerous condition of the bank which he was assisting in excavating so as to clearly assert an unusual condition, supported by evidence that after each blast the bank was left rough and uneven with protruding pieces of earth which were ordinarily removed by other employees, but that the mass of earth which fell and injured plaintiff had not yielded to their efforts and was left hanging contrary to custom, authorized an instruction that unless the hanging earth presented an unusual condition plaintiff could not recover.

**Same:** SAFE PLACE TO WORK: DUTY TO WARN. Where there is evidence justifying a finding that one employee had full charge of the work with authority to direct others what work to do and when and where to do it, an instruction that if he directed plaintiff to work in the presence of a danger apparent to him, or by the exercise of reasonable prudence should have been known to him, of which plaintiff was ignorant, his failure to warn plaintiff of the danger was negligence of the master, was proper; his authority to direct the work not being merely incidental to details which the master might delegate.

**Same.** In this action plaintiff with others was engaged in loading clay from a bank onto cars, and a coemployee had been assigned

the duty of warning those at work in the pit of danger from falling pieces of clay from the bank; and it is *held* that the service of the employee whose duty it was to give warning was connected with and essential to carrying on the work, and the master was not bound to continue his supervision of the men engaged in actually loading the clay, as to danger incident to the ordinary conduct of the work, and was not liable for failure to give plaintiff notice of the danger from falling earth.

Weaver, J., dissenting.

*Appeal from Webster District Court.*—HON. CHAS. E. ALBROOK, Judge.

SATURDAY, JUNE 10, 1911.

ACTION for damages resulted in judgment against defendant from which it appeals.—*Reversed.*

*Hewitt, Miller & Wallingford, Healy & Healy,* and *C. Woodbridge,* for appellant.

*Kenyon, Kelleher & O'Connor* and *B. J. Price,* for appellee.

PER CURIAM.—The defendant is a corporation engaged in the manufacture of brick and tile and procures the material therefor from a pit or excavation near by. The material is shoveled into wheelbarrows which are wheeled to a platform and dumped into cars, on which it is hauled where needed. Five to eight men were employed in shoveling, and others, by blasting and the use of picks, bars, or shovels, loosened the clay from the bank. This bank was fifty or sixty feet high, and plaintiff who had been employed as a shoveler about a year and a half, on July 3, 1908, while shoveling clay on his wheelbarrow at the foot of the bank, was struck by a mass of clay cleaving therefrom, and seriously injured. The bank was being removed from the south so that the surface from which clay

was being taken faced the sun. It was composed of strata of yellow clay, shale and black sticky clay known as rubber clay. The latter was about twelve or fifteen feet from the top, and when wet was tenacious, and not easily handled, but when dry crumbled readily. A blast had been fired the day before and as usual left the surface with protruding pieces of earth or clay. Ellinger fired the blast, and with the assistance of Kemp and sometimes of Fessel, removed the loose pieces and protruding masses so that they would not fall on laborers below. All these were removed except a bulging mass of the black clay extending a foot and a half from the surface, as testified by defendant's witnesses, and estimated at three feet by plaintiff and according to Fessel five feet long, which after repeated efforts they were unable to detach. Ellinger had tried to pry it off at four different times. Fessel had assisted him at about 8 o'clock that morning. They had driven their bars four or five inches deep one on each side and together attempted to pry it off. The evidence also tended to show that there had been some attempt to undermine it. The plaintiff had been working about thirty feet from a point below this protruding mass in the forenoon and had been shoveling scattered pieces of dirt until about 2:30 or 3 o'clock in the afternoon when, according to his testimony, Fessel directed him to work at the bank below the protruding black clay. He had worked there but a short time when it fell. William Fessel was vice president and director of the defendant company, and according to the testimony "was head man in the work in the clay pit and gave all directions as to the work mentioned." The evidence was such that the jury might have found not only that Fessel gave the order, but also that he knew that the place was dangerous for that the protruding clay was likely to fall at any time. Plaintiff was aware that efforts had been made to remove this, but testified that he was without knowledge of any danger in working where he did. It

was the duty of Ellinger to warn the men in the pit of any danger from falling clay and to advise them when such danger ceased. The plaintiff had been told by Fessel that Ellinger would watch the bank, saying: "Go ahead and work. George will watch the bank." Ellinger testified: "When there was any danger I told them to look out." Though the mass of clay was not removed by the use of bars or picks, the evidence discloses that it might have been dislodged by blasting. The day was very warm, and evidently the rubber clay which was ordinarily wet, sticky, and tenacious, had dried out. Ellinger's testimony and that of several experts tended to show that "leaving a bulging mass exposed and especially with the conditions resulting from the use of bars, leaving holes therein, would cause it when exposed to the sun for some time to crack and fall."

I. The court instructed the jury that unless the bulging mass of rubber clay presented an unusual condition the plaintiff could not recover. This was on the theory that

1. MASTER AND SERVANT: personal injury: instruction.

plaintiff had been employed in the pit a year and a half, and was familiar with all the conditions ordinarily incident to the removal of clay from the embankment, and for this reason must be held to have assumed the risks of injury therefrom. Of course, if the conditions were unusual, the inference that he knew of and appreciated the danger would not follow. It is contended that such a situation was neither alleged nor proven. It was stated in the petition that the place where plaintiff was directed to work was unusually and extraordinarily dangerous and hazardous, and that the bank where he was working was in a dangerous and defective condition, all of which defendant knew and of which plaintiff was unaware. The condition then was described, and, while the words "unusual condition" may not appear in the petition, the facts alleged clearly so assert. Nor ought it to be said that there was no evidence to support such alle-

gation. While the bank after each blast was rough and uneven with pieces of clay protruding, these ordinarily were readily removed by Ellinger and his assistants. The bulging mass in question had not yielded to the efforts of these men, and was left hanging contrary to custom, and in being allowed to remain presented a condition unusual and with the dangers of which the men in the pit might have been found to have been unfamiliar. There was no error.

II. But three grounds of negligence were submitted to the jury. The first of these was that "defendant was negligent in directing plaintiff to occupy a position and

2. SAME: safe place to work: duty to warn.

to work at a place at the foot of said bank beneath a part thereof, which was in such condition that the same was likely to cave or fall therefrom and without giving plaintiff warning." The evidence warranted a finding that Fessel was in full control of the work with authority to direct plaintiff and other employees what work to do, when and at what particular place to do it. The court instructed that if Fessel did direct the plaintiff to work in a place where there was overhanging the plaintiff a portion of the bank of clay of an unusual character, and not incident to the work then in hand that was likely to fall on the plaintiff to his injury, and that the said Fessel did in fact know of such dangerous condition, or by the exercise of reasonable prudence and ordinary care, and as a person of ordinary intelligence, should have known thereof, and gave the plaintiff no warning thereof, such would be an act of negligence on the part of the defendant, and for which the defendant would be liable for any injuries resulting therefrom as a direct consequence thereof.

This instruction is criticised for that there was no evidence of the existence of an unusual condition, and that the direction was merely as to a detail of doing the work which the company might delegate. But, as said, the jury.

might have found the condition unusual, and if Fessel, with knowledge thereof and that such condition involved danger in that the protruding mass of clay was likely to fall at any moment, and was aware or ought to have been aware that plaintiff did not appreciate such danger, then clearly he was not directing him as to a mere detail of the work, but with reference to a situation not involved in the ordinary routine of employment. As said in *Schminkey v. Sinclair & Co.*, 137 Iowa, 130, "It is plainly the duty of the master to warn his employees of these new and latent dangers and this duty can not be delegated to another in such a manner as to relieve the ordinary master from the results of nonperformance." *Hardy v. Chicago, R. I. & P. R. Co.*, 149 Iowa, 41, is directly in point. It was there said: "The effect of the order was to require him to work in a situation exposed to a peril not thereofore encountered, nor in so far as appears contemplated. Not every direction with reference to the progress of the work even when given by a superior servant is to be regarded as coming from the master as appears from the authorities relied on by appellant. . . . But where the effect of the peremptory order of a person in complete control, as was Nesmith, is to place the employee in a place of great peril in which to perform his duties, the decisions are conclusive that the principal will be held responsible for the act as nondelegable." See *Pantzar v. Mining Co.*, 99 N. Y. 368 (2 N. E. 24); *O'Driscoll v. Faxon*, 156 Mass. 527 (31 N. E. 685); *Ill. Steel Co. v. Schymanowski*, 162 Ill. 447 (44 N. E. 876); *Bradley v. Ry.*, 138 Mo. 293 (39 S. W. 763). See *Hill v. Winston*, 73 Minn. 80 (75 N. W. 1030). The instruction is approved.

III. The third ground of negligence was that "the defendant having undertaken to give warning of the falls of earth, and it being the custom and practice for the employee George Ellinger to give such warning, the said Ellinger failed to give warn-

3. SAME.

ing of said fall of earth from said bank in time to permit plaintiff to escape, and in this respect said defendant was negligent." In submitting this to the jury, the trial court seems to have followed an opinion of this court, since withdrawn, by granting a rehearing, the appeal being subsequently dismissed. In *Hendrickson v. Gypsum Co.*, 133 Iowa, 92, to give warning that an explosion was about to occur in a mine was held to be a masterial duty, but we have never gone farther and said that it was also a masterial duty to warn employees of the dangerous consequences of such explosion known to have occurred; that is, where the system adopted for performing the work is not defective. That was a border line case, and as observed in *Galloway v. Turner Imp. Co.*, 148 Iowa, 93, presented a situation which called for the application of the rule in an exceptional way. "The underlying thought of the opinion in that case was that the method of use of high explosives about the mine rendered the whole place unsafe, and that it left no means to the workmen to protect themselves while remaining in their places at work. And that therefore the master had no right to convert the place of the workmen into a place of danger by such use of high explosives in blasting except as he assumed the duty precedent to give notice of the proposed explosion so that the workmen could withdraw from the place of danger so created. This is only another way of saying that the right of the master to use high explosives in such a way as to render the places of the workmen dangerous is conditioned upon a previous notice or warning for the purpose of enabling them to withdraw. In case of an explosion, the place of the workmen became unsafe, not through the negligence of any fellow servant, but in accord with the very plan of the master. It was held in effect, therefore, that the duty to warn the workmen to leave their places was inseparable from the right to such use of high explosives." See, also, *Helgeson v. Higley Co.*, 148 Iowa, 587.

The authorities seem to be agreed that a master is not liable for the negligence of a servant in failing to notify a coemployee of the approach of a transitory peril which, as the work progresses, will render the environment unsafe for a brief period but which may be easily avoided if due warning is given. Here Ellinger had been assigned to the duty of warning those shoveling in the pit of any danger to be feared from the falling of protruding pieces of clay from the bank and in discharging this duty he was acting as their fellow servant. What he did was connected with and quite as essential to carry on the work as was that of shoveling. All were engaged in the common enterprise of removing the clay from the bank to the cars, and there seems to be no difference in principle in this case and the many cases decided in this and other courts in which it has been held that one who is working in a gravel pit, or in a trench assumes the risk of the falling of material which is loosened and comes down as the result of the ordinary operation of excavating. *Welch v. Carlucci Stone Co.*, 215 Pa. 34 (64 Atl. 392), 7 Am. & Eng. Ann. Cas. 299 and notes; *Swanson v. Lafayette*, 134 Ind. 625 (33 N. E. 1033); *Griffin v. Ohio, etc., R. Co.*, 124 Ind. 326 (24 N. E. 888); *Swanson v. Great Northern R. Co.*, 68 Minn. 184 (70 N. W. 978); *Allen v. Logan City*, 10 Utah, 279 (37 Pac. 496); *Naylor v. Chicago, etc., R. Co.*, 53 Wis. 661 (11 N. W. 24); *McQueeny v. Chicago, M. & St. P. R. Co.*, 120 Iowa, 522.

The case of *Hill v. Winston*, 73 Minn. 80 (75 N. W. 1030), is relied upon for plaintiff as analogous and supporting the contention that decedent should have been warned of the danger. That case seems to be unsupported by any pertinent authority, but it may be distinguished from the present case on the grounds that the plaintiff was put to work under the bank without knowledge of its dangerous condition; and it does not appear that he was a coemployee of those who in the course of their work

produced such a dangerous condition. It is certainly not the duty of the employer having half a dozen men at work in a clay pit to continue his supervision over them with reference to the ordinary operation of bringing down and loading the clay. *Ailes v. Illinois Cent. R. Co.,* 135 Iowa, 154; *Ritzema v. Valley City Brick Co.,* 152 Mich. 75 (115 N. W. 705); 2 Labatt, Master and Servant, section 601. The instruction was erroneous.

Other errors are argued, but either· they will not arise on another trial or should be denied.—*Reversed.*

Weaver, J. (dissenting).—I can not concur in the reasoning employed nor conclusion reached in the third paragraph of the foregoing opinion. The decision in *Hendrickson v. Gypsum Co.,* 133 Iowa, 92, was announced after protracted consideration, and more than ordinarily thorough discussion, and I can conceive of no sound reason for impairing its value as a precedent by finely drawn distinctions. The charge of negligence was there sustained, not because the danger to the plaintiff was from the use of "high explosives" merely, but because the danger was of such serious and extraordinary character that the master was reasonably required to make the same a subject of his oversight and to give warning thereof to his workmen. While it is true that the servant takes the risk of dangers ordinarily incident to the work he undertakes and must use a reasonable degree of caution to care for his own safety, it is equally true that a man employed in a quarry, a clay pit, or a mine is not employed nor is he expected to spend his time in looking minutely into the conditions by which he is surrounded or in noting extraordinary dangers which have been created or brought about by the act or order of the master or the act or omission of those to whom the master has intrusted control of the operations in which he is engaged. A workman who exercises such extreme care for his safety would soon find himself out of

employment. His labor as a rule is a kind which requires him to bend his body forward and keep his eyes downcast, trusting to the care of the master not to expose him to unknown or extraordinary danger without warning. It is of course also true that a master is not liable for the mere failure of a fellow servant to give warning, but I fail to see how that doctrine has any pertinence to this case or why it should be cited by the majority. It had just been announced in the preceding paragraph of the opinion that the trial court did not err in permitting the jury to treat Fessel as a vice principal and to find that his negligence in omitting to give the warning would be the negligence of the defendant, and I see no essential difference in the conditions there being considered and those attending the phase of the case covered by the instruction held to be erroneous. True, Ellinger was in a certain sense and in certain relations a fellow servant with plaintiff, but we have held too often to justify citation of precedents, that the rank of the servant is not of itself decisive of the question whether the immediate duty in which he is engaged is one of masterial character. If, then, as held in the second paragraph of the opinion, the jury was justified in finding the plaintiff entitled to a warning of the danger, on what principle shall the master be exonerated from liability because by custom or otherwise that duty had been left to Ellinger?

Again, I contend it to be a sound proposition, that even if the duty to warn would not otherwise arise, yet if by the act or usage of the master, or by custom or usage which has become an established or recognized feature of his method or manner of conducting the business, some one workman is charged with the duty of giving warning of an impending danger, thus relieving the general body of servants in some degree from the tension of watchfulness on their own account and enabling them to perform more constant and more effective service for the master, he

thus makes such warning a part of his own primary duty, and the negligence of the person who is relied upon to perform it is his negligence.   Otherwise the form or pretense of furnishing a warning in this manner becomes a mere trap by which the servant is lulled into a feeling of security which must often result in death or serious injury, for which there is no redress.   The observance of such a custom may also be treated as one of the rules which the master has adopted for the government of his employees and the management of his business and as such the servant is justified in relying upon it.   Bearing more or less directly on this feature of the case see:   *Hough v. Power Co.*, 41 Or. 531 (69 Pac. 655); *Felice v. R. R. Co.*, 14 App. Div. 345 (43 N. Y. Supp. 932); *Colorado City v. Liafe*, 28 Colo. 468 (65 Pac. 630); *Augusta v. Owens*, 111 Ga. 464 (36 S. E. 830); *Coal Co. v. Gruber*, 91 Ill. App. 15 (same case 188 Ill. 584, 59 N. E. 254); *Simone v. Kirk*, 173 N. Y. 7 (65 N. E. 739); *Anderson v. Mill Co.*, 42 Minn. 424 (44 N. W. 315); *Burlington & M. Co. v. Crockett*, 19 Neb. 138 (26 N. W. 921); *Anderson v. R. R. Co.*, 8 Utah, 128 (30 Pac. 305); *Railroad Co. v. Holcomb*, 9 Ind. App. 198 (36 N. W. 39); *Anderson v. Coal Co.*, 108 Minn. 455 (122 N. W. 794, 26 L. R. A. (N. S.) 624); *Comrade v. Atlas Co.*, 44 Wash. 470 (87 Pac. 517); *Nelson v. Wiley Co.*, 26 Wash. 548 (67 Pac. 237); *Hjelm v. Granite Co.*, 94 Minn. 169 (102 N. W. 384); *Fitzgerald v. Twine Co.*, 104 Minn. 138 (116 N. W. 475).   These and numerous other cases of like import, many of which are cited in *Anderson v. Coal Co.*, 108 Minn. 455 (122 N. W. 794, 26 L. R. A. (N. S.) 624), fully sustain the view taken by the trial court.   It also has the support of the most obvious principles of that common right and justice which are supposed to pervade our legal system.

In my opinion the judgment below should be affirmed.