## Welch *v.* Carlucci Stone Company, Appellant.

*Negligence—Master and servant—Place of employment—Quarry.*

While it is the duty of the employer to provide an employee with a reasonably safe place to work, it does not follow that the question of what constitutes a safe place must always be submitted to a jury. Negligence is the want of care under the circumstances, but there can be no recovery of damages in any case unless there has been a breach of legal duty, and if there has been no breach of a legal duty, it is the province of the court to say so.

Where an owner of a quarry sets an employee to work to clear off a bank of earth from the top of a ledge of stone, and the workman comes upon a large loose stone imbedded in the earth, but not connected with the ledge, and no part of the quarry proper, and this stone becomes dislocated not through any operation of the quarry, but from the digging under it, and slides suddenly upon the workman, who is thereby injured, the latter cannot recover from the owner of the quarry for the injuries which he has sustained.

Argued March 13, 1906. Appeal, No. 42, Jan. T., 1906, by defendant, from judgment of C. P. Susquehanna Co., Aug. T., 1903, No. 242, on verdict for plaintiff in case of Leroy T. Welch v. Carlucci Stone Co. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Trespass to recover damages for personal injuries. Before SEARLE, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $15,000. Defendant appealed.

*Error assigned* amongst others was in overruling motion for judgment for defendant non obstante veredicto.

*Edward W. Thayer* and *T. J. Davies*, for appellant.—The court had no right to permit a jury to guess or conjecture from mere possibilities, in order to find negligence on part of the defendant, without proof of actual facts to support them: Phila., etc., R. R. Co. v. Schertle, 97 Pa. 450; R. R. Co. v. Hughes, 119 Pa. 301; Huey v. Gahlenbeck, 121 Pa. 238; Reese v. Clark, 146 Pa. 465; Durst v. Carnegie Steel Co., 173 Pa. 162; Higgins v. Fanning, 195 Pa. 599; Alexander v. Penna. Water Co., 201 Pa. 252; Smith v. Traction Co., 202 Pa. 54; Price v. R. R. Co., 202 Pa. 176; Ault v. Cowan, 20 Pa. Superior Ct. 616; Cracraft v. Bessemer Limestone Co., 210 Pa. 15; Meixner v. Phila. Brewing Co., 210 Pa. 597; McKinzie v. Philadelphia, 8 Pa. C. C. Rep. 293.

The word "safe" in connection with cases of negligence has more than its literal meaning: Titus v. Bradford, etc., R. R. Co., 136 Pa. 618; Ross v. Walker, 139 Pa. 42; Dooner v. D. & H. Canal Co., 171 Pa. 581.

The servant assumes the risk of all patent defects or "seen dangers" in the course of his employment, and this whether the same existed when the employment commenced or otherwise: O'Donnell v. R. R. Co., 59 Pa. 239; Brossman v. R. R. Co., 113 Pa. 490; Simmons v. Traction Co., 207 Pa. 589; Sykes v. Packer, 99 Pa. 465; Miner v. Connecticut R. R. Co., 153 Mass. 398 (26 N. E. Repr. 994); Sheetram v. Trexler Stave, etc., Co., 13 Pa. Superior Ct. 219.

When danger arises only as work progresses and the accident be caused by the work done the plaintiff cannot recover: Durst v. Steel Company, 173 Pa. 162; Fulford v. R. R. Co., 185 Pa. 329; Bellows v. Canal & R. R. Co., 157 Pa. 51; Fletcher v. Traction Company, 190 Pa. 117; Masterson v. Eldridge, 208 Pa. 242; O'Driscoll v. Faxon, 156 Mass. 527 (31 N. E. Repr. 685).

*John M. Kelley* and *Paul J. Sherwood*, for appellee.—The plaintiff was entitled to a safe place to work: Lynch v. Allyn, 160 Mass. 248 (35 N. E. Repr. 550); Rogers v. Overton, 87 Ind. 410; Indiana Car Co. v. Parker, 100 Ind. 181; Lebbering v. Struthers, 157 Pa. 312; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543; Welch v. Butz, 202 Pa. 59; Brislin v. Coal Co., 20 Pa. Superior Ct. 234; Ricks v. Flynn, 196 Pa. 263; Buck v.

Zinc Co., 204 Pa. 132; Wagner v. Chemical Co., 147 Pa. 475.

OPINION BY MR. JUSTICE ELKIN, April 16, 1906:

The appellant owns and operates a stone quarry. The appellee was employed as a laborer to do work in and about the same. The quarry consisted of a ledge of blue stone rock which was covered with earth twelve to fifteen feet deep. It had been worked for some years, and as a result a considerable portion of the ledge and earth had been cut away from the face of the hill. The appellee, thirty-eight years of age, was a blacksmith, and had worked on a farm. He was not familiar with stone quarries, but was put to work as a laborer, doing such things as an inexperienced man could do. On the morning of the accident he and a fellow laborer were working on the top of the ledge of rock at the base of a bank of earth with which it was covered. It was their duty to dig the earth loose with a pick, then shovel it in a box, which, when filled, was carried away by a derrick. The bank was composed of earth, loose bowlders and stones. There was nothing peculiar or dangerous about its formation. In the bank in front of them about shoulder high the end of a stone was partially exposed. It was imbedded in the bank, but the part exposed was in plain view of the laborers. This loose stone was not connected with the ledge and was no part of the quarry proper. The two laborers, working together, had excavated a considerable amount of earth by digging under it, when, without warning, and while appellee was stooping down, the stone slid down upon him, by reason of which he received injuries for which he claims damages in this action. After the stone was removed it was discovered that it was about three feet wide, four feet long, three to four inches thick, and weighed from 400 to 600 pounds. A small amount of earth in which the stone was imbedded fell with it. The appellee bases his right to recover principally on the ground that it was the duty of appellant to provide him a safe place to work, which duty it is alleged had been neglected in this case. While it is the duty of an employer to provide an employee with a reasonably safe place to work, it does not follow that the question of what constitutes a safe place must always be submitted to a jury. It is true,

negligence is the want of care under the circumstances, but there can be no recovery of damages in any case unless there has been a breach of legal duty, and if there has been no breach of a legal duty, it is the province of the court to say so.

The first question to be considered is, what duty did appellant owe appellee in the matter of providing a safe place to work? The words "safe place" in such cases have no fixed and definite meaning. In determining what is a safe place, much depends upon the facts of each particular case. In some instances it is a question for the court, and in others for the jury. An employer cannot be convicted of negligence in not providing a safe place to work where, from the very nature of the employment, the risks and dangers are as apparent to the employee as to the employer. The top of a twenty-story building in a sense may be considered an unsafe place to work, but it will not be seriously contended that if a mechanic should be injured by falling from the top of such a building without any fault of his employer, he could recover damages for injuries received because of the allegation that he was put to work in an unsafe place. So, too, a brakeman on a freight train, whose duty calls him to travel back and forth on the top of the cars, and while so doing receives an injury through no fault of the railroad company, cannot recover damages on the ground that he was provided with an unsafe place in which to work. In the case at bar the appellee desired to secure work at the quarry, which work was more or less dangerous, but the dangers were open and obvious, and as well known to the employee as to the employer. It was the business of the appellant company to strip off the bank and blast out the rock for commercial purposes. It is a useful and proper business. It was necessary to strip off the bank above the ledge in order to quarry the rock. Certainly a jury cannot be permitted to say that appellant was negligent because appellee was put to work removing the earth from above the ledge. He stood upon the solid ledge of rock, and in front of him was a bank of earth with nothing unusual or dangerous about it. These were natural conditions, and if there were any dangers they were obvious to any person with ordinary intelligence. It is argued, however, that appellant had done, or permitted to be done, three things which made it an unsafe place. First, it had

caused to be drilled eight feet back of the face of the bank down through the earth five or six holes about three inches in diameter, about which appellee was not informed. Second, that at a point estimated to be seventy-five to 100 feet from the place of accident there had been drilled in the ledge some holes in which dynamite had been placed and exploded for the purpose of blasting the rock. Third, that the quarry had not been worked in a careful and proper manner, because it was alleged the bank immediately over the ledge had been undermined to some extent and weakened. The case was tried in the court below upon the theory that these were hidden and latent dangers unknown to appellee, and that the injury had resulted by reason of the bank being thus weakened. Expert testimony was admitted, the purpose and effect of which was to show that the bank was, or could have been, affected by these things and the accident might have resulted therefrom. This error permeated the whole trial, for the reason that the testimony of the experts did not fit the facts of the case. The accident did not occur because the bank was weakened. The bank did not fall. It remained the same after as before the accident, with the exception of the loose stone and some earth attached to it which alone fell. The drilled holes in the bank of earth, the Knox shots in the ledge of rock, and the so-called undermining of the bank, were not the direct or proximate cause of the accident, and therefore the expert testimony is without value in determining the question of the alleged negligence. At a trial for homicide in a proper case it would be competent to show that at the time the crime was committed a shot was fired and defendant was seen with a loaded gun in his hands pointed at a vital part of the body. But if, in point of fact, the testimony clearly established that no bullet had touched or penetrated the body of the deceased, and that death had resulted from a bludgeon blow on the head, the irrelevancy of such testimony would be manifest. There are some things about which expert testimony cannot enlighten us. We know without expert or scientific instruction that when a tooth is pulled it hurts, or when a finger is cut it bleeds, or when a stone is thrown into the air it falls to the earth, or when the foundations that support a rock are dug away it will slide or fall down. The experience common to mankind teaches us

these things better than the knowledge of experts.  In the present case, if the injury had resulted from a fall of the overhanging bank, the testimony of the expert witnesses relating to the latent danger and negligent operating theory relied on by appellee might have some bearing, but inasmuch as the bank did not fall, and hence could not have caused the accident, this testimony was irrelevant, and should not have been submitted to the jury.  When the appellee went to work the place in which he was working was safe.  He might have remained there for weeks without being injured, but as he and his fellow workmen proceeded with their work they changed these natural conditions.  The work done by them dislodged the stone which fell upon and injured appellee.  The injury occurred while appellee was prosecuting the work in which he was engaged, and as a result of his own labor in digging the earth from under the stone, and was one of the risks incident to his employment.  Any person of ordinary intelligence knows that if you dig the earth from under a rock it will fall, and that is what was done in this case.  All persons are presumed to know the law of gravitation.  It has not yet been declared as the law of this or any other state that an employer who provides his employee with a pick and shovel and sets him to work on the top of a solid ledge of rock, and on the face of an ordinary bank of earth, can be made liable in damages on the ground of furnishing unsafe tools with which, or an unsafe place in which, to work.

It is somewhat remarkable that no similar case has been before this court, although such accidents must have been of frequent occurrence.  Questions of a similar character have arisen in many courts of other jurisdictions, and it may be instructive to note the rule relating to same laid down in those cases.  In Indiana it has been held that a laborer working in a gravel pit assumes the risk arising from the liability of sand and gravel falling during the process of excavation: Swanson v. City of Lafayette, 134 Ind. 625.  Also that a servant who was injured while undermining a bank of gravel and clay below a stratum of earth which fell upon him cannot recover: Railsback v. Wayne County Turnpike Company, 10 Ind. App. 622; Griffin v. O. & M. Ry. Co., 124 Ind. 326.  In Missouri, that a laborer engaged in excavating a bank of iron ore assumes the risk in-

cident thereto : Aldridge v. Midland Blast Furnace Company, 78 Missouri, 559. In Texas, that an employee assumes the risk in going above an overhanging gravel ledge and digging a ditch for the purpose of dislodging the ledge : M. K. & T. Ry Co. v. Spellman, 34 S. W. Repr. 298. In Minnesota, that an employer is not liable in a case where the employee was put to work on a hill from which the employer was removing gravel and while loosening the material while performing his work received injuries : Swanson v. Great Northern Ry. Co., 68 Minnesota, 184. To the same effect: Kletschka v. M. & St. L. Ry. Co., 80 Minnesota, 238 ; Pederson v. Rushford City, 41 Minnesota, 289. In Utah, that a laborer cannot recover against his employer for injuries caused by the fall of a bank caused by undermining the same for the purpose of removing it : Allen v. Logan City, 10 Utah, 279. In Wisconsin, that a workman of ordinary intelligence, whether experienced or not, is presumed to know that when a bank of earth is undermined by removing its foundation it is liable to fall : Naylor v. Chicago & N. W. Ry. Co., 53 Wis. 661. In Tennessee, that an ignorant and illiterate negro laborer must be taken to understand that the sides of a ditch dug in soil which is composed of cinders is liable to fall: Brown v. Chattanooga Electric Ry. Co., 101 Tenn. 252.

It appears from these authorities that the courts have uniformly refused to hold that it is the duty of an employer to provide a place in which to work absolutely free from danger. On the other hand, it has been expressly held that when an employee engages to work in such places, he assumes the risks and dangers incident thereto and resulting from natural causes. In all such cases, the word " safe " must be understood to be used in the sense of " safe " according to the usage, custom and risk of the business in which the employee is engaged.

A jury under the circumstances of this case cannot be permitted to guess at or conjecture about what constitutes a safe place or what caused the accident without proof of facts to support the theories relied on or facts from which an inference of the alleged negligence can be fairly drawn : Alexander v. Pennsylvania Water Company, 201 Pa. 252 ; Smith v. Traction Company, 202 Pa. 54 ; Cracraft v. Bessemer Limestone Com-

pany, 210 Pa. 15; Meixner v. Philadelphia Brewing Company, 210 Pa. 597.

Judgment reversed, and it is ordered that judgment be entered in the court below for the defendant non obstante veredicto.