# Donohue v. Western Union Telegraph Company, Appellant.

*Negligence—Fall through trap—Telegraph company—Contributory negligence—Evidence.*

In an action against a telegraph company to recover damages for personal injuries sustained, by falling through an open trap in a hall, it appeared that defendant occupied for its telegraph offices a front room in a small building, access to which room from the street was by a hall running along the side of the room. The defendant's employees' only entrance to the front room where the telegraph appliances were, was by going through the hall to a door which opened into a back room. The hall could be lighted by opening a shutter. The public transacted its business with the company through a window in the partition between the hall and the front room. Between this window and the door to the back room there was a trap in the floor of the hall leading to the cellar. The defendant had no control over the cellar nor the door to the trap. Plaintiff went to the defendant's office about ten o'clock in the morning to deliver a telegraph message. She entered the hall, found the window closed, and not receiving any answer to her knock, but hearing the click of the instruments in the front room, she started along the hall to enter the back room in order to secure attention. As she did so she fell into the trap, the door of which had been left open by a plumber employed by the owner of the house, a few minutes before. Plaintiff was injured. *Held*, (1) there was no error in the refusal of the trial judge to instruct the jury that plaintiff was guilty of contributory negligence (2) that there was no negligence on the part of the defendant, except that it had failed to open the shutter by which the hall could have been adequately lighted, and (3) that it was reversible error for the trial judge to charge that the defendant was bound to supply a "safe" place instead of "a reasonably safe place" for the transaction of business by its patrons.

Argued Dec. 12, 1913. Appeal, No. 179, Oct. T., 1913, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1911, No. 3,307, on verdict for plaintiff in case of Annie T. Donohue v. The Western Union Telegraph Company. Before Rice, P. J., Henderson, Orlady, Head and Porter, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Staples, P. J., specially presiding.

The court charged in part as follows:

This is an action of negligence, brought by the plaintiff, Annie T. Donohue, against the Western Union Telegraph Company, the defendant, and the specific negligence claimed was the leaving open of a trapdoor, or there being a trapdoor open in the hallway of a building at the corner of Thirtieth and Chestnut streets, through which the plaintiff fell, and she alleges that she was injured, by means of which injury she suffered, as she stated, pain, and was not able to pursue her ordinary avocation in life, and by that means lost her earnings which she would have earned if she had not had the accident happen to her.

Negligence is the want of care under the circumstances. The plaintiff in this case stated that she desired to send a telegram on March 4, 1911, and that she came to this building at the corner of Thirtieth and Chestnut streets, in front of which there was a sign "Western Union Telegraph Company," a round sign (I do not know whether she said was it metal or not, but we will take for granted it was), and that she entered a hallway which was dark, and right after she got in the hallway, or right next to the door as she went in the hallway, there was a window through which messages were to be handed to the operator of this telegraph company. This window was closed. She knocked with her umbrella, we think she said, upon the floor, receiving no response, and nobody apparently paying any attention to her, although she heard the telegraph instrument click, and hearing some noise, as she thought, in the room further on down this hall, the door of which was open and through which she saw the light, she started for that door, for the purpose of sending this telegram or seeing the operator, and she had only walked a few steps, or a short distance, when she fell into a hole in the floor, and from the other evidence it may be concluded that it was a trapdoor in this hall, from which the cellar might be entered. Her one

foot went down through this hole, the other one caught
upon the floor furthest from where she was walking,
and her head caught on the other side of this hole, and
she says that she was severely injured, from which in-
jury she was obliged to refrain from work, and so forth,
about which we will instruct you later.   That is the
substance of her testimony.

[It appears from the testimony that this building
belonged to the Pennsylvania Cold Storage and Market
Company and that they leased a portion of these prem-
ises to the Western Union Telegraph Company for the
purpose of its business.   We charge you that if you
find that this hallway was under the control of the
Western Union Telegraph Company, and that it in-
vited its intending customers into this hallway, and
by reason of that this plaintiff fell into this hole, and
that it was the duty of the defendant to have protected
this hallway and kept it safe for all its customers, that,
it being left open and this accident happening, the de-
fendant was liable for the injuries which were sustained
by the plaintiff.]   If, however, you find that this hall-
way was simply used by it as a way of entering into
its office, and that it had no other control of it, but the
control was the control of the landlord, or the Pennsyl-
vania Cold Storage and Market Company, and it was
by the action of the Pennsylvania Cold Storage and
Market Company, or its employee, that this accident
happened, then we say to you that the defendant com-
pany was not liable, because there was no duty upon
its part to protect this hallway unless it had the control
of the hallway.

You see that this is a perplexing question for either
you or the court to decide.   It depends upon just how
far this invitation of the defendant company went in
its inviting customers into this hallway. [4] [It had its
sign upon the outside, which invited the customer in.
Right after the customer entered the hallway there
was a window for the customer to hand in his message.

Was there any right for the customer to assume that if this window were closed, he could walk down through the hallway and get the operator there? If you find that it was reasonable for a person of ordinary judgment to presume or to think, that if the window of the telegraph company was closed the place to deliver his message was down that hall to that door that was open, then we say to you that if the accident happened to the plaintiff in this case by means of such an assumption, and it was reasonable for the ordinary person so to assume, and this trapdoor was open and the hole was there and it was dark, and, using proper care, she fell into it, that was negligence upon the part of the defendant company, and the plaintiff is entitled to recover.] [6]

There was no such right of assumption upon the part of the plaintiff in this case if the only place where she was invited to come was the window, and, that being closed, that the door at the end of the hall was the Western Union Telegraph door she ought to have turned around and gone out, and had no right to assume that this door down at the other end, which was open, was a door connected with the Western Union Telegraph Company. If, having no right to so assume, she simply walked down through this hall for the purpose of inquiring and finding out, and this hall was under the control of the landlord, the Pennsylvania Cold Storage and Market Company, then we say to you that, the accident happening as it did, the plaintiff is not entitled to recover from the defendant in this case.

That, as far as the question of negligence is concerned, is the law. It is incumbent upon the plaintiff to show, by the weight of the evidence, that this hallway was under such control, either absolutely or apparently, of the defendant company, as gave the plaintiff the right to assume that if she could not get her message through this window, she had a right to walk to the open door to inquire whether or not the operator was there. Upon

the other hand, what was there upon the other door that would have given her a right to assume that it was a door of the Western Union Telegraph Company? We are not aware that there was any evidence that there was any sign upon that door. The door was simply open, and, as we recollect the testimony, although that is for you, that room was under the control of the Pennsylvania Cold Storage and Market Company. It was their scale room, and we do not have in mind any testimony whatever that the Western Union Telegraph Company used that office in any way, except to walk through it to enter into their own office, and otherwise it was entirely under the control of the Pennsylvania Cold Storage and Market Company.

We are going to submit to you a question which we desire you to answer specially, and we have written it out: Question to be specially found by the jury, Was the trapdoor, through which the plaintiff fell, opened and left open by an employee of the Pennsylvania Cold Storage and Market Company? We desire you to answer that question as a whole, yes or no, and to write your answer under the question. It is the opinion of the court, that under all the testimony in the case, there is no practical dispute that this trapdoor was opened by an employee of the Pennsylvania Cold Storage and Market Company, but we submit it to you as a question of fact for you to decide, as it is clearly within your province so to do.

[If you find, under the instructions of the court, that the defendant company did not have such control of this hallway, and was not bound by its invitation to look after this trapdoor, to see that it was kept closed all the time, so as to protect proposed customers from falling in, then you need not consider the question of damages, and your verdict should be in favor of the defendant company. But if you find that the hallway was under such apparent control of the defendant company as authorized the plaintiff to assume, that if the

window was closed she could go on down through the hallway and inquire at the other door for the operator, hearing the clicking of the instrument, and so forth, then we say to you that you may consider the question of damages, if you find that the defendant company was negligent under that theory.] [10]

[We charge you that, the defendant company having invited proposed customers to enter this hallway, it was its duty to see that this hallway was properly lighted, and if the accident happened because of the hallway not having been properly lighted, and that might have been prevented, or would have been prevented if the hallway had been properly lighted, then we say to you that the defendant company was guilty of negligence and the plaintiff is entitled to recover.] [8]

Defendant's points were as follows:

1. Under the evidence in this case your verdict must be for the defendant. [2]

2. If you believe the testimony of defendant's witness that Henry Johnson, a plumber employed by the Pennsylvania Cold Storage and Market Company, the lessor of the building, opened the door leading to the cellar for the purpose of entering the cellar to do some plumbing work for the lessor and left the door open without notice to the defendant, the lessee of the building, or its servants, then the neglect in this case is the negligence of the lessor, the Pennsylvania Cold Storage and Market Company, and not the negligence of the defendant, and your verdict must be for the defendant. [3]

Verdict and judgment for plaintiff for $600. Defendant appealed.

*Errors assigned* among others were (2, 3, 4, 6–8) above instructions, quoting them.

*W. B. Linn*, with him *A. D. Wiler* and *H. B. Gill*, for appellant.—There was no evidence of negligence:

Lewin v. Pauli, 19 Pa. Superior Ct. 447; Green v. Baltimore & Ohio R. R. Co., 214 Pa. 240; Drake v. Fenton, 237 Pa. 8; Huey v. Gahlenbeck, 121 Pa. 238; Sweeney v. Barrett, 151 Pa. 600; Burns v. Pennsylvania Co., 233 Pa. 304; Kantner v. Philadelphia & Reading Co., 236 Pa. 283; Mills v. Brandes, 235 Pa. 219.

The alleged darkness was not the legal cause of the accident: Greis v. Hazard Mfg. Co., 209 Pa. 276; Foard v. Rath, 33 Pa. Superior Ct. 182; Bannon v. Pennsylvania R. R. Co., 29 Pa. Superior Ct. 231.

*C. S. Wesley,* of *Tustin & Wesley,* for appellee.—The case was for the jury: Reid v. Linck, 206 Pa. 109; Bloomer v. Snellenburg, 221 Pa. 25; Drake v. Fenton, 237 Pa. 8.

OPINION BY HEAD, J., July 15, 1914:

The room in which the defendant company conducted the business of its branch office was not directly accessible from the street. It occupied the entire front of the small single story building in which it was located except the portion taken up by a hall which opened from the street. This hall extended back along the side of the defendant's office to a door giving access to the rear room of the two which the building contained. The only way by which the employees of the defendant could reach their places of employment was by entering this hallway from the street, traversing it to the door leading into the rear room and passing through that room into the telegraph office. Patrons of the company were expected to enter this same hallway from the street and pass along it a short distance to a window which pierced the partition separating the hallway from the telegraph office. The hall itself could be easily and abundantly lighted during the daytime from windows which were protected by shutters. The defendant had no possession or right of possession of the cellar and no control whatever of a small trapdoor in the hallway by

means of which the owner of the building could have access to the cellar.

About ten o'clock on the morning of the accident which gave rise to this litigation, the plaintiff was desirous of sending a telegraphic message. She had no previous acquaintance with this particular office of the defendant but saw on the building the usual sign that a telegraph office was there located. She entered the hallway and found it in partial obscurity by reason of the fact that the shutters of the windows had not yet been opened. She was able to see, however, the small window in the partition, with the usual shelf, etc., indicating the place for the receipt of her message. She found that window closed. She could hear the clicking of the telegraph instruments within and the voices of the employees in conversation. She pounded on the floor with her umbrella in the effort to attract their attention, but failed to secure it. Looking about for some other means of depositing her message, she saw that the door leading into the rear room at the farther end of the hall was ajar, and concluding that it probably furnished access to a place where her message would be received, started towards it. The testimony shows that just a minute or two before her entrance, a plumber, employed by the owner to do some work in the cellar, had lifted the trapdoor in the floor of the hallway and gone below without closing the opening, leaving no light or protecting it in any way. The plaintiff, unable because of the obscurity of the hallway, to see the opening, fell into it and was injured. Thereupon she brought this action to recover damages. The learned trial court refused to direct a verdict for the defendant but submitted the questions of the defendant's negligence and the contributory negligence of the plaintiff. The jury found for the latter and this appeal followed.

We cannot agree that the learned trial judge should have declared, as matter of law, that the plaintiff was guilty of contributory negligence. Relying on the invi-

tation extended by the defendant company's sign on the exterior of the building, the plaintiff lawfully entered the hallway for the purpose of sending a telegram. She was entirely warranted in expecting that a reasonably safe place would be provided for the transaction of the business in hand. It is quite true she reached in safety the small window usually marking the place for the receipt of messages. Having found that closed, the defendant earnestly contends that her duty required her to depart as she had come, and that, in the attempt to find a way to have her message reach the operator, who was within, she overstepped the limits of the invitation that had been extended to her and voluntarily assumed the risk of anything that might occur to her in going farther. But it is apparent to us that the line of conduct that would be followed by a reasonable man under such unusual circumstances is not so plain that a trial court could say, as a matter of law, that she had gone outside the suggestions of reasonable prudence. Having lawfully entered the premises at the invitation of the defendant, she was entitled to make such use of them as a person of reasonable prudence under like conditions would have done, and it must be the function of a jury to determine the extent of such use. There was therefore no error in the refusal of the trial judge to declare the plaintiff guilty of contributory negligence.

There was no evidence in the case to warrant a finding by the jury that defendant had any control whatever of the trapdoor leading to the cellar; nothing to show that it ever used such opening or had a right to use it; nothing to indicate that it had any knowledge of the manner in which it was used by the landlord, or that there was any intention or purpose to use it on the morning in question. If the opening of the trapdoor by an employee of the landlord and leaving it unguarded were the sole and proximate cause of the injury to the plaintiff, her case against the defendant would fail on the principles declared in Green v. Baltimore & Ohio R. R.

Co., 214 Pa. 240, and Mills v. Brandes, 235 Pa. 219. Under such circumstances the case last cited would be practically on all fours with the one at bar and would necessarily control our conclusion. We are satisfied therefore that the learned judge below erred in so submitting the case to the jury as to permit a finding by the latter that the defendant had any control whatever over the trapdoor in the floor of the hallway. The evidence furnishes no warrant for such conclusion and that question had no part in the proper disposition of the case.

But it does not follow that the plaintiff would have been injured because of the unguarded opening in the hallway, had the defendant performed a duty manifestly incumbent on it for the protection of its patrons who lawfully entered the hallway. It was its duty to furnish to such patrons a reasonably safe place in which to transact their business. It was obliged to see that the hallway into which it invited its patrons was so lighted by natural or artificial light that by the proper use of their senses they could protect themselves from injury even from an opening in the floor of the hallway or an incumbrance deposited there without the knowledge of the defendant: Hall v. Bessemer & Lake Erie R. R. Co., 36 Pa. Superior Ct. 556. It is in this respect that the present case is differentiated from those we have cited. The plaintiff's statement averred the failure to light the hall as a distinct act of negligence on which her case rested. Instead of directing the attention of the jury prominently to this alleged act of negligence and the testimony supporting it, the case was practically submitted to them as if it turned on the question whether or not the defendant had such control of the hallway as to make it responsible for the opening of the trapdoor or leaving the opening unguarded. It was only at the conclusion of the charge, when the attention of the court was specially called to the situation, that a few words were said to the jury on what was in fact the controlling question in the case.

Moreover, more than once during the charge the learned trial judge declared to the jury that it was the duty of the defendant to furnish a safe place for the transaction of business by its patrons. The assignments of error complain of such instructions as laying down a rule too broad because it would be tantamount to a declaration that the defendant became the insurer of the safety of every patron whilst engaged in the transaction of business with it. The learned counsel for the appellee urges upon us that the trial judge was using the word "safe" in what he terms a colloquial sense and that other parts of the charge sufficiently define the limits within which he used it so as to preclude the idea that the jury were misled thereby. How we might regard this argument, if we were able to view the question as an open one, we need not consider. In two very recent cases the Supreme Court has flatly declared that the failure of the trial judge to qualify such a statement so as to make it declaratory of the true rule of the law is reversible error. We need not stop to argue that the duty of the defendant in a case like the present is not different in kind or degree from the duty of an employer to furnish a reasonably safe working place for his employees. In Powell v. American Sheet & Tin Plate Co., 216 Pa. 618, Mr. Justice ELKIN says: "It is not an accurate definition of the duty of a master to his servant to say that he must furnish 'a safe place to work and safe tools with which to work.' Employers are only required to furnish a reasonably safe place in which and reasonably safe tools with which to work. The distinction is based on substantial grounds. . . . We have had occasion to review this question at some length in the recent case of Welch v. Carlucci Stone Co., 215 Pa. 34, in which the rule of reasonable safety as to place and tools was discussed and adhered to. . . . There is error in that part of the charge of the learned trial judge wherein it is said, 'If there is any neglect upon the part of the employer in furnishing a safe place to work or in furnishing safe

tools with which his employees are required to work, then the employer is liable.' This definition states the rule too broadly and places upon the employer a higher standard of care than the law requires." Fairly applying, as we must, this language and the rule it expresses to the charge of the learned court below, we necessarily reach the conclusion that he fell into error. We have thus endeavored to indicate the reasons why we think the case was improperly tried and the lines upon which it must be retried. There is therefore no occasion to consider the assignments of error in detail.

The judgment is reversed and a venire facias de novo awarded.