## Director General of Railroads v. Advance Industrial Supply Co.

*Contract—Railroads—Owner of siding—Responsibility for safety of cars.*

1. Where the owner of a siding contracts with a railroad company "to be responsible for the safety of any and all cars placed upon" the siding, such owner is charged only with the obligation of reasonable care in the performance of such duty, and he will not be liable for the destruction of the cars by fire in the absence of negligence on his part.

2. In such case, the duty of reasonable care applies not only to the cars of the railroad company, but also to cars of connecting companies placed on the siding by the railroad company.

Statutory demurrer filed to plaintiff's amended statement. C. P. Adams Co., Jan. T., 1922, No. 151.

*C. S. Duncan* and *C. S. Butt,* for plaintiff; *John D. Keith,* for defendant.

McPHERSON, P. J., Jan. 6, 1925.—The plaintiff brings this action to recover from the Advance Industrial Supply Company the cost of repair to one freight-car and the value of another freight-car which were respectively injured and destroyed by fire on the switch running into the plant of the

defendant from the track of the Western Maryland Railway, B. & H. Division, the fire having occurred on Dec. 26, 1919, and having been communicated to the cars from the defendant's plant, where the fire originated.

The statement alleges no negligence on the part of the defendant in relation to the injury to and destruction of the cars in question, but relies for recovery on articles of agreement entered into between the Western Maryland Railroad Company and the defendant corporation when the switch upon which the injured and destroyed cars were standing was erected. The agreement relates to the erection, management, maintenance and operation of the switch in question and the rights and liabilities in relation thereto of the above defendant and the Western Maryland Railroad.

The cars in question were cars belonging to a carrier which had connection with the Western Maryland Railroad Company and had been placed on the switch in question by the plaintiff, then in control of the Western Maryland Railroad, for the purpose of being loaded with materials manufactured at the defendant's plant.

By reason of agreements entered into between the plaintiff and the connecting carriers, whose cars were injured and destroyed, the plaintiff became liable to these connecting carriers for the damages to the car injured and for the value of the car which was destroyed. These agreements, however, were entered into after the agreement between the defendant company and the Western Maryland Railroad in relation to the switch, its erection, management, maintenance and operation. In the original agreements between the defendant company and the Western Maryland Railroad, it was provided that the second party, the defendant, agrees to: "Be *responsible* to the first party for the safety of any and all cars and their contents placed upon the said track for the second party and for any and all loss or damage to persons or property on or adjacent to said track, except as such loss or damage may be occasioned by the negligence of the first party, its agents or servants."

The liability arising from this provision is the liability which the plaintiff seeks in this action to enforce against the defendant. The defendant urges that the above provision of the article of agreement, properly construed, does not impose any liability on the defendant, because by it the only liability imposed upon the defendant was that of using reasonable care in the performance of the duties assumed by the contract, and as no negligence on the part of the defendant is averred in the statement, no liability for the result of the fire attaches to the defendant.

The phrase used in the contracts between the Western Maryland Railroad and the defendant corporation, under which the defendant is sought to be charged with liability, is, that for the cars placed upon the switch in question the defendant would be "responsible for their safety," and for any breach thereof would be liable in damages for any injuries to any persons or property on said switch not caused by the negligence of the Western Maryland Railroad.

Under the weight of the authorities in which the word "responsible" and the words "safe or safety," in relation to obligations arising from their use have been construed, it seems to be established that the only obligation arising therefrom is that the person being charged with duty thereby shall exercise reasonable care in the performance of said duty. This is illustrated by the following cases: Fairmont Coal Co. v. Jones-Adams Co., 134 Fed. Rep. 711, decided by the Circuit Court of Appeals for the Seventh Circuit.

In this case the defendant was the lessee of a coal dock, which dock it controlled and managed. The plaintiff was the producer and shipper of coal.

By contract, the defendant agreed to act as agent of the plaintiff in storing, handling and selling coal. The coal was to be shipped to the defendant upon consignment and was to remain the property of the plaintiff until sold. The plaintiff was to insure the coal consigned and deliver same safely alongside of the defendant's dock, and thereafter, that is, after such delivery of coal at the docks of the defendant, it was provided that the defendant "shall thereupon be responsible to the said first party (the plaintiff) for all coal after such delivery alongside of its dock." The defendant's dock collapsed, destroying a large amount of the plaintiff's coal, which had been delivered to the defendant under the terms of the contract. The collapse was without any fault or negligence of the defendant. The Circuit Court of Appeals held that the relation between the plaintiff and the defendant was that of bailor and bailee, and that the liability of the bailee to exercise reasonable care was not enlarged to that of an insurer by the terms of the contract above referred to.

The statutes requiring municipalities to keep their ways safe have been construed as imposing on the municipality only the duty to keep them reasonably safe and not absolutely safe: Morgan v. Lewiston, 91 Maine, 566; s. c., 40 Atl. Repr. 545; McCloskey v. Moies, 19 R. I. 297; s. c., 33 Atl. Repr. 225.

A "safe place to work" has been construed to mean safe according to usage, custom and risk of the business and not a place absolutely free from danger: Welch v. Carlucci Stone Co., 215 Pa. 34, 40. To the same effect, where employers were bound to furnish safe machinery: St. Louis, etc., Ry. Co. v. Barnett, 65 Ark. 255. "Safe and suitable appliances" were construed to mean nothing more than reasonable, safe and suitable and not absolutely safe: Wall v. Marshutz, etc., 138 Cal. 522; Davis v. N. W. R. R. Co., 75 S. C. 303.

"Safe place to work is a place only that is reasonably safe, not absolutely free from danger:" Louisville, etc., Ry. Co. v. Hanning, 131 Ind. 528; s. c., 31 N. E. Repr. 187; Chicago, etc., R. R., Co. v. Champion, 9 Ind. App. 510; s. c., 36 N. E. Repr. 221.

In view of these authorities, we are of the opinion that the contract in question imposed on the defendant only the duty of exercising reasonable care in relation to cars and their contents placed on switch by the railroad for defendant's use, and that the purpose of the provision of the agreement whereby the defendant was charged with the "responsibility for the safety" of the cars delivered for loading was to impose clearly upon the defendant the relation of bailor and bailee to those cars, thus removing any uncertainty in relation thereto by reason of the ownership by the railroad of the ground on which the switch was erected and the almost complete control thereof which the agreement gave the railroad.

The agreement, of course, applies to all cars, whether of the Western Maryland Railroad or of any connecting carrier placed on the switch, and the responsibility assumed by defendant would be the same, no matter which class of cars was used by the railroad for that purpose. In view of our construction of the language of the contract, the duty of exercising reasonable care is the measure of the defendant's liability.

It is, however, argued that the responsibility of the railroad company to the connecting carrier for cars placed by it on the switch in question for the use of the defendant company at the time of the execution of the agreement between the Western Maryland Railroad and the defendant would be of service in construing the responsibility imposed upon the defendant company under the agreement, on the theory that in the agreement in question the defendant company would not assume a larger responsibility to the Western

Maryland Railroad for the safety of the cars of the connecting carrier than the railroad itself had under the law. At the time of the execution of the original switch agreements, the responsibility of the Western Maryland to the connecting carrier in regard to cars of the latter placed upon the switch in question, for the accommodation of the defendant, was unaffected by the subsequent agreements entered into between the plaintiff and the connecting carrier, whose cars were injured and destroyed.

It is contended on the part of the defendant that this responsibility, under the above circumstances, was that of a warehouseman; whereas, it is contended by the plaintiff that the responsibility was that of an insurer.

Under the law, a common carrier, while performing its duties as such and having in its possession as such the cars of a connecting carrier and their contents, is responsible in relation thereto as an insurer. This relationship, however, exists only so long as the carrier is performing its duties as such. The obligation of the common carrier to the connecting carrier is: First, to deliver according to consignment; and, second, upon the discharge of the contents by the consignee, to repossess itself of said car and return it to the connecting carrier. The duty to redeliver the cars after unloading, however, is also subject, under the general course of business between carriers, to the right of a carrier to deliver said car for purposes of reloading to any shipper along the lines of said carrier before returning the same to the connecting carrier, the owner of the car. When so delivered to such a shipper, what is the legal relation thereto and what responsibility arises therefrom on the part of the particular carrier?

In the recent case of Central of Georgia Ry. Co. *v.* Milledgeville Ry. Co., 75 S. E. Repr. 614, in a situation very similar to that of the present case, it was held that for cars of the plaintiff, a connecting carrier, in the possession of the defendant, a common carrier, pending their being allotted to a shipper on the lines of the defendant for loading and reshipment in accordance with the usage of the carriers, the liability of the defendant was simply that of a warehouseman and not that of an insurer, and for the damage resulting from the destruction of the cars so held, without negligence on the part of the carrier, said carrier was not liable. With this view of the law we are inclined to agree, and are of the opinion that, as applied to the facts as set forth in the plaintiff's statement, the liability of the plaintiff, outside of the obligation of the agreements entered into by him subsequent to the agreement between the defendant and the Western Maryland Railroad in regard to the particular switch in question, was merely that of a warehouseman. We are also of the opinion that there is nothing in the agreement between the Western Maryland Railroad and the defendant to show any intention to impose upon the defendant, in relation to the cars of the connecting carrier while on the switch in question, any larger liability than that to which the Western Maryland might have been subject.

From every point of view, we are of the opinion that the contract in question imposed no liability on the defendant in relation to the cars placed on the switch in question for its use, greater than that of warehouseman or of exercising ordinary care. The contract, therefore, made the defendant liable merely for negligent acts, and as no negligence on the defendant's part is alleged in the statement, no cause of action against the defendant is therein set forth. The demurrer thereto must, therefore, be sustained.

And now, Jan. 6, 1925, the within demurrer is sustained and the suit instituted by the plaintiff is herewith dismissed.

From John P. Sipes, McConnellsburg, Pa.